Argued and submitted June 2, affirmed December 8, 2004

Kevin STARRETT,
*Appellant,*

*v.*

CITY OF PORTLAND,
a political subdivision of the State of Oregon,
acting by and through the State of Oregon,
*Respondent.*

0201-00365; A120898

102 P3d 728

Eric Winters and Kristian Roggendorf argued the cause and filed the briefs for appellant. With Kristian Roggendorf on the briefs was O'Donnell & Clark LLP.

Harry Auerbach, Senior Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

## LINDER, J.

Plaintiff, who is licensed to carry a concealed hand-gun, brought this action for declaratory and injunctive relief against defendant City of Portland (the city). Plaintiff alleged that the city unlawfully allows private lessees of public property to prohibit people licensed to carry concealed handguns from doing so at events on the leased property. The trial court granted the city's motion for summary judgment and dismissed the action. Plaintiff appeals, and we affirm.

We view the evidence in the light most favorable to plaintiff.[1] In November 2001, the city enacted an ordinance contracting with Entercom Portland, Inc. (Entercom), a privately owned company that owns several Portland area radio stations, to host a New Year's Eve celebration. Under the agreement, the city was to pay Entercom $49,200 and was to provide certain "in-kind city services[,] including Police, Fire, EMT support" and clean-up services. Entercom, in return, agreed to produce and to assume essentially all other responsibilities associated with the event. The New Year's Eve celebration was to take place on the upcoming New Year's Eve (*i.e.*, December 31, 2001) in Pioneer Courthouse Square (Pioneer Square).[2] To facilitate the celebration, the city passed a second ordinance that authorized Entercom to close certain streets around Pioneer Square for the event. That second ordinance also authorized, but did not require, Entercom to "adopt and enforce rules of conduct for the event."[3]

Consistently with the authorization under the second ordinance, Entercom adopted rules of conduct for the event and conditioned entry to and participation in the event on compliance with them. The rules included a provision that precluded persons from entering or remaining at the event while possessing "[w]eapons or similar instruments that could be used to inflict injury upon a person or damage to

---

[1] *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997) (in reviewing grant or denial of summary judgment, record is viewed in the light most favorable to nonmoving party).

[2] *See* Portland City Ordinance 176100 (2001).

[3] Portland City Ordinance 176120 (2001).

property, including but not limited to, firearms[.]" The rules made no exception for a person who had a license to carry a concealed handgun.

Plaintiff, a resident of Oregon, planned to attend the New Year's Eve celebration. He holds a license to carry a concealed handgun and intended to carry his concealed handgun during the event. When plaintiff learned that firearms were prohibited by the rules of conduct, he sought a temporary restraining order to compel the city to permit him to enter the event with his handgun. The trial court denied that relief and, ultimately, plaintiff did not attend the event. Plaintiff then amended his complaint to seek declaratory and injunctive relief prohibiting the city in the future from allowing private lessees to preclude the carrying of concealed handguns, pursuant to a license, at events on leased public property.

The city moved for summary judgment on two alternative grounds. First, the city asserted that the action was moot because the New Year's Eve celebration was over. Second, the city asserted that, as a matter of law, the city may lease public property to private parties on terms that permit the lessees to prohibit the possession of weapons on the leased property or at events held on the leased property, without an exception for persons licensed to carry a concealed handgun.[4]

The trial court did not decide the mootness issue. Instead, the trial court granted the motion for summary judgment on the merits, concluding that the city lawfully could lease public property to private parties on the terms under which it leased Pioneer Square to Entercom. In so concluding, the trial court rejected plaintiff's contrary legal position. The trial court also rejected plaintiff's argument that, under the terms of the agreement with Entercom, a disputed factual issue remained that prevented summary judgment. In that regard, plaintiff had argued that, even if a private lessee can preclude licensed persons from carrying concealed handguns at a private event held on leased public property, there

---

[4] The city also argued before the trial court that, if the state statute imposed the kind of limitations on city authority that plaintiff asserted, then that statute would violate Article XI, section 2, of the Oregon Constitution (providing municipal home rule authority). The city does not renew that argument on appeal.

was a factual dispute as to whether this was such an event. According to plaintiff, the circumstances would permit a finding that Entercom acted at the city's behest in promulgating the "no weapons" rule and that the city was engaged in a joint venture with Entercom in hosting the New Year's Eve event. The trial court, however, disagreed that the evidence gave rise to a fact question on that point. Thus, approximately one year after the New Year's Eve celebration had been held and was past, plaintiff's action was dismissed and this appeal ensued.

On appeal, the parties renew the arguments that they made to the trial court in support of and against the grant of summary judgment for the city. Contrary to the approach taken by the trial court, however, we begin with the question of whether the case is moot. As we explain below, we conclude that the legal question presented by plaintiff's challenge—*i.e.*, whether a city may in the future lease public property on terms that permit private lessees to prohibit the possession of handguns by persons licensed to carry a concealed handgun—is not moot. But we reach the opposite conclusion on the fact-bound question of whether, under this particular agreement for a New Year's Eve celebration, there was a triable issue of fact as to the city's status and involvement in this particular event.

As the Oregon Supreme Court recently reaffirmed, mootness is one of the "constellation of related issues" encompassed within the broader question of justiciability. *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004). Under traditional principles, a case is justiciable if the parties have adverse interests and the court's decision in the matter will "have some practical effect on the rights of the parties to the controversy." *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). The requirement that the court's decision have a practical effect on the party invoking the court's jurisdiction must remain satisfied throughout the litigation. *Utsey v. Coos County*, 176 Or App 524, 540, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003). Thus, a case that is "otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties, will be dismissed as moot." *Brumnett*, 315 Or at 406. That is true

even if the case involves issues that are " 'capable of repetition, yet evading review.' " *Yancy*, 337 Or at 363. In Oregon, the judicial power simply does not extend to moot or otherwise nonjusticiable matters. *Id.*

■ ■ The fact that a controversy between the parties arises from a discrete event that has ended at the time of the litigation does not mean, necessarily at least, that the legal issues in the case are moot. They may not be if, for example, the *rights* of the parties remain in dispute and the activities that give rise to the dispute are ongoing. Our decision in *Safeway, Inc. v. OPEU*, 152 Or App 349, 353, 954 P2d 196 (1998), illustrates the principle. In that case, Safeway sought declaratory and injunctive relief against a union to stop the union from petitioning on Safeway's property. Safeway's complaint alleged that the challenged union activities would occur in the future. The union, in response, voluntarily ceased it activities and asserted that it had no plans to engage in the activities again, but it simultaneously asserted that it had the right to do so. Under those circumstances— *i.e.*, Safeway's allegation that the activities would occur in the future, the fact that the union merely had voluntarily ceased its activities, and the union's assertion of an ongoing right to engage in the challenged activities—we concluded that the controversy was not moot. *Id.* at 356.

As in *Safeway, Inc.*, both parties to this case assert competing rights arising out of ongoing activities, despite the fact that the New Year's Eve celebration that gave rise to their dispute is over. And, unlike in *Safeway*, the city in this case has not voluntarily ceased its activities. To the contrary, plaintiff's complaint pleads, and the city does not deny, that the city regularly leases public property to private entities on terms that permit the parties to exclude persons licensed to carry concealed handguns, as the lease did in this case. One such prior lease is a matter of record in this case. Plaintiff also alleges that the city will lease property on those terms in the future. Plaintiff's baseline position is that he has a right to carry a concealed handgun on public property and that the city cannot lawfully lease public property on terms that permit the infringement of that right. The city's baseline position is that the law does not restrict the city from permitting

private lessees of public property to make their own choices about whether to admit persons carrying handguns onto the property so leased. A judicial resolution of that dispute will bear on the parties' disputed future rights and obligations arising out of activities that assertedly are ongoing, not just the parties' rights and obligations in connection with the now-past event that gave first rise to the dispute (*i.e.*, the New Year's Eve celebration on December 31, 2001). As in *Safeway, Inc.*, the essential controversy as to the terms on which the city can lease public property to private persons remains, and a judicial resolution will give the parties meaningful relief; that issue, therefore, is not moot.

■ The same is not true, however, of plaintiff's alternative fact-based argument for challenging the grant of summary judgment. Plaintiff asserts that, even if private lessees may exclude persons who carry concealed handguns pursuant to a license at privately sponsored events held on public property, the New Year's Eve celebration in question was not a private event. According to plaintiff, the terms of the agreement between Entercom and the city created a disputed issue of material fact as to whether the New Year's Eve celebration was a joint venture with the city or whether Entercom was the city's agent in hosting it. In support of that argument, plaintiff relies on a variety of agreement-specific details characterizing the particular agreement between Entercom and the city pertaining to the December 2001 New Year's Eve celebration.[5] Plaintiff asserts that whether to take that view of the arrangement between Entercom and the city is a triable issue of material fact that cannot be resolved by summary judgment.

That issue, unlike the issue of the respective legal rights of the parties, is moot. The December 2001 New Year's Eve celebration is long past. Nothing in the record suggests that the aspects of the agreement on which plaintiff relies for his "joint venture" and agency theory are typical of the city's

---

[5] For example, plaintiff relies on the fact that the term sheet signed by Mayor Vera Katz referred to the event as "the city's New Year's Eve celebration," as did press releases issued by the city about the event; that the city paid Entercom $49,200; that the city waived certain permit fees; and that the city provided what plaintiff speculates likely amounted to "tens of thousands of dollars" of city services in support of the event.

leasing agreements for public property. Nor did plaintiff plead or the city admit as much. The summary judgment record thus provides no evidentiary basis for such a conclusion. A trial on that asserted factual dispute, then, would be directed only to resolving whether the city was engaged in a joint venture to produce an event on the particular occasion in question—that is, the New Year's Eve celebration on December 31, 2001. The *relief* that would flow from a resolution of that issue would be a declaration that the city's 2001 agreement was or was not unlawful and, if unlawful, an injunction that would permit plaintiff to attend the now-past celebration while carrying his concealed handgun. Axiomatically, that relief would have no practical effect on the parties now. *Brumnett*, 315 Or at 405-06. Consequently, the factual issue that plaintiff asks us to decide is moot, and we cannot consider it.

■ We therefore turn to the broader legal question that is not moot—*i.e.*, whether the city may lease public property to private parties on terms that permit private parties to decide to prohibit persons licensed to carry concealed handguns from carrying the handguns into the event on the property so leased. Plaintiff's position is premised on ORS 166.170 and ORS 166.173, which effectively prohibit a city from regulating the carrying of concealed handguns, pursuant to a license, on public property. According to plaintiff, because a city lacks authority to enact such a regulation, it follows that a city cannot lease public property to private persons on terms that allow the private lessee to do what the city cannot do. Plaintiff reasons that the city "may not transfer by lease those property rights which are forbidden it by virtue of statutory prohibition." In response, the city argues that the statutes do not impair what private users may do on leased public property; rather, the statutes limit only the regulatory authority of the city itself. As we explain, we agree with the city.

ORS 166.170(1) vests in the legislature the exclusive authority to regulate various activities pertaining to firearms:

"Except as expressly authorized by state statute, the authority to regulate in any manner whatsoever the sale,

acquisition, transfer, ownership, possession, storage, transportation or use of firearms * * * is vested solely in the Legislative Assembly."

ORS 166.170(2) reinforces that exclusive authority by expressly prohibiting cities from regulating activities involving firearms unless the legislature has granted that authority expressly:

"Except as expressly authorized by state statute, no * * * city * * * may enact civil or criminal ordinances * * * to regulate, restrict or prohibit the sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms * * *."

The legislature has, by express statutory provision, authorized cities to regulate firearms in public places. That same statutory provision, however, exempts from those regulations persons licensed to carry concealed handguns. In particular, under ORS 166.173(1), a city "may adopt ordinances to regulate, restrict or prohibit the possession of loaded firearms in public places." Under paragraph (2)(c), however, any ordinances so adopted "do not apply to or affect * * * [a] person licensed to carry a concealed handgun." In effect, a city may, in a general way, "regulate, restrict or prohibit" the possession of firearms by persons on public property. But by operation of law, persons licensed to carry a concealed handgun are not subject to those regulations.

By those terms, the limits that the pertinent statutes place on a city's authority are limits on the authority to *enact ordinances* that *regulate* firearms. The statutes do not purport to limit the right of private parties to exercise control over property that they rent, lease, or own. In other words, the statutes limit regulatory authority delegated to cities by the legislature, not private property rights.

An ordinance leasing public property to a private person, on terms that permit the *private person* to decide whether to permit persons carrying concealed handguns (even with a license) to enter the leased property or participate in an event on that property, is not an exercise of governmental regulatory authority. If anything, such an ordinance is the antithesis of governmental regulation. By declining to dictate who must be allowed onto the leased property or who

must be allowed to participate in a private event hosted on the leased property while the property is under the control of the lessee, the city does nothing more affirmative than decline to interfere with the property rights of a private lessee.[6] We therefore agree with the city that a lease of public property to a private party on such terms does not run afoul of ORS 166.170 or ORS 166.173.[7]

In arguing to the contrary, plaintiff reasons:

> "Simply put, what the [c]ity cannot do on its property, the lessee of [c]ity property cannot do. This is a function of basic property law. Property rights are a finite 'bundle of sticks' and whatever stick a conveyor of property lacks, the subsequent grantee will lack."

In support of that reasoning, plaintiff cites *Hawkins & Roberts v. Jerman*, 147 Or 657, 665-67, 35 P2d 248 (1934), for the "fundamental maxim" that a "landowner cannot convey a greater estate than that which it possesses."

The problem with plaintiff's argument is that it confuses property rights with municipal authority to exercise governmental regulatory power. Restrictions on a municipality's regulatory authority are not the legal or logical equivalent of restrictions on its property rights. ORS 166.170 and ORS 166.173 do not alter a city's *title* to property. Rather,

---

[6] Because of that conclusion, we need not consider the city's further argument that we should construe ORS 166.170 and ORS 166.173 to avoid constitutional problems that might arise if the city were required to lease property on terms that *prohibit* private lessees from excluding persons carrying concealed weapons pursuant to a license. *See, e.g., Boy Scouts of America v. Dale*, 530 US 640, 648, 120 S Ct 2446, 147 L Ed 2d 554 (2000) ("The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints."); *Roberts v. United States Jaycees*, 468 US 609, 623, 104 S Ct 3244, 82 L Ed 2d 462 (1984) ("Freedom of association * * * plainly presupposes a freedom *not* to associate." (Emphasis added.)).

[7] The city also cites and relies on ORS 166.174, which prohibits the city from renting or leasing a public building to a private person on terms that "regulate, restrict or prohibit the possession or sale of firearms" in the rented or leased public building. Under that statute, the city *must* leave to the private lessee the decision whether to admit persons with licenses to carry concealed handguns into the leased building. The city argues that the statute reflects a legislative policy of noninterference with "the property rights of private users of public property." By its terms, however, the statute is directed only to public buildings and says nothing, one way or the other, about other public property. It therefore provides no particular guidance here.

those statutes limit a city's *regulatory* authority—that is, a city's organic authority as a governmental entity. If a city possesses fee title to property, it can convey fee title to property (assuming, of course, that it has authority to possess and sell property in the first place). Nothing in either ORS 166.170 or ORS 166.173 serves to prevent a private purchaser of formerly public property from both receiving and exercising the full rights of the title conveyed, which would include the right to exclude from the property persons who carry concealed handguns pursuant to a license to do so. The same is true when a city rents or leases property—that is, the statutes do not limit private property rights in property rented or leased from a city or other governmental entity. Plaintiff's reliance on the property rights analysis in *Hawkins & Roberts* is misplaced.[8]

In sum, ORS 166.170 and ORS 166.173 do not preclude a city from leasing public property to a private party on terms that permit the private party to choose whether to permit persons to carry concealed handguns pursuant to a license to enter onto the leased property or attend an event on the leased property. We therefore affirm the grant of summary judgment in the city's favor on that ground.

Affirmed.

---

[8] Similarly misplaced is plaintiff's reliance on *Gathright v. City of Portland*, 315 F Supp 2d 1099 (D Or 2004). That is a public forum case. The federal court's decision stands for the proposition that, when government turns a public forum over to private speakers for the expression of their viewpoint, the property does not lose its character as a public forum. *Id.* at 1104. The court therefore held that any restriction on access to the property by persons with competing viewpoints must be narrowly tailored to the goal of protecting the associational rights of the private party holding a permit to use the public forum. *Id.* The federal court also held, however, that the private permittees *may* eject others from the property based on the *content* of their speech, which is something that government itself would not be able to do. Implicit in the federal court's decision was a rejection of the point that plaintiff's rely on here—*i.e.*, that a private lessee of public property cannot do anything on that property that government cannot do.