Argued and submitted April 13, University of Oregon, Eugene, vacated and remanded with instructions November 18, 2009

### Jane DOE,
*Plaintiff-Appellant,*

*v.*

### MEDFORD SCHOOL DISTRICT 549C,
*Defendant-Respondent.*

### Jackson County Circuit Court
### 073765E2; A137804

221 P3d 787

James E. Leuenberger argued the cause and filed the briefs for appellant.

Timothy C. Gerking argued the cause for respondent. With him on the brief were Thaddeus G. Pauck and Brophy Mills Schmor Gerking Brophy & Paradis, LLP.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief *amicus curiae* for State of Oregon.

Rebekah R. Cook filed the brief *amicus curiae* for Oregon School Boards Association.

Bruce L. Campbell, Jeffrey G. Condit, Michael Porter, and Miller Nash LLP filed the brief *amicus curiae* for Portland Public School District No. 1J and Portland Community College District.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Medford School District 549C adopted a policy that prohibits its employees from possessing firearms on school district property or at school-sponsored events. Plaintiff, a school district employee who wishes to carry a handgun while teaching, initiated this declaratory judgment action challenging the lawfulness of that policy. The scope of that challenge is a narrow one: Plaintiff contends that the school district's policy violates a statute, ORS 166.170, which she contends legislatively preempts the school district from regulating firearms in any manner. She sought a declaration in the circuit court to that effect. ORS 28.010 - 28.160. The school district moved to dismiss plaintiff's complaint for failure to state a claim. The trial court granted the motion, concluding that ORS 166.170 does not preempt the school district from adopting its policy. The court entered judgment dismissing plaintiff's complaint.

Plaintiff appeals, arguing that the trial court erred in concluding that ORS 166.170 does not have the effect of preempting the school district's policy prohibiting an employee's possession of firearms on school district property or at school-sponsored events. We conclude that the trial court did not err in reaching that conclusion. We also conclude, however, that the proper disposition of the case is not the dismissal of the complaint but, rather, the issuance of a judgment declaring the effect of ORS 166.170. We therefore vacate the judgment and remand for entry of such a judgment.

## I. FACTS

In 2005, the school district adopted the following policy concerning the possession of firearms:

"Employees, district contractors and/or their employees and district volunteers shall not possess a dangerous or deadly weapon or firearm on district property or at school-sponsored events. This prohibition includes those who may otherwise be permitted by law to carry such weapons.

"* * * * *

"Employees in violation of this policy will be subject to discipline up to and including dismissal. Individuals contracting with the district and volunteers will be subject to appropriate sanctions. A referral to law enforcement may be made."

By its terms, the policy relates only to employees, contractors, and volunteers; it is undisputed that the policy does not relate to third parties who come onto school property.

Plaintiff is employed by the school district as a teacher. She is also licensed to carry a concealed handgun. Because she fears a violent confrontation with her former husband, she wants to carry her handgun with her at all times, including while she is at school teaching.

In 2007, the school district learned that petitioner possessed a license to carry a concealed handgun and that she wished to bring the weapon with her to school. The school district's human resources department informed plaintiff of its no-weapons policy and warned her of the consequences of violating that policy. Plaintiff agreed to follow the policy while it remained in force.

Plaintiff then initiated this declaratory judgment action, seeking a declaration from the court that the school district's policy is void under ORS 166.170, which provides:

"(1)   Except as expressly authorized by state statute, the authority to regulate in any matter whatsoever the sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms or any element relating to firearms and components thereof, including ammunition, is vested solely in the Legislative Assembly.

"(2)   Except as expressly authorized by state statute, no county, city or other municipal corporation or district may enact civil or criminal ordinances, including but not limited to zoning ordinances, to regulate, restrict or prohibit the sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms or any element relating to firearms and components thereof, including ammunition. Ordinances that are contrary to this subsection are void."

In her complaint, petitioner cited only ORS 166.170(2) and omitted any reference to ORS 166.170(1). She alleged that,

because the school district's policy "regulates" her possession of a firearm, the policy violates the statute and is void.[1]

The school district moved to dismiss the action for failure to state a claim for relief pursuant to ORCP 21 A(8), asserting that the statute does not preempt reasonable employee-related policies such as the one at issue in this case. In response to the school district's motion, plaintiff asserted that the school district's policy was preempted by ORS 166.170(2), but also noted that ORS 166.170(1) serves as important context to understanding that provision because it vests sole authority in the legislature to "regulate in any matter whatsoever" relating to firearms. In addition, she asserted that ORS 166.170(1), "standing alone," should be read to preempt the school district's policy in this case.

The school district responded that its policy is merely a valid employment policy pertaining to the use of its own property by its own employees. According to the school district, ORS 166.170 limits the authority of "districts," which it contended refers not to school districts but to a specific municipal government entity, "special districts." Aside from that, the school district argued, the statute applies only to "ordinances," a specific form of municipal legislation. In this case, the school district contended, its policy is not a form of municipal legislation; rather, it is merely an employment policy that applies only to school district employees.

The trial court concluded that the policy was not preempted and granted the school district's motion to dismiss. The court first concluded that ORS 166.170(1) does not have separate and independently enforceable effect. Rather, the

---

[1] Although plaintiff sought a declaration that the whole of the policy is void, we take her contention to mean that it is void to the extent that the policy restricts her possession of firearms. As we have noted, the policy prohibits an employee from possessing a "dangerous or deadly weapon or firearm." Although a working firearm certainly qualifies as a dangerous or deadly weapon, it does not necessarily follow that a dangerous or deadly weapon is a firearm. *See* ORS 161.015(1) (defining "dangerous weapon" as "any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury"); ORS 161.015(2) (defining "deadly weapon" as "any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury"). We do not understand plaintiff to assert that the policy is void as to its restriction of weapons other than firearms, and we do not address that issue.

court concluded, that subsection states the general policy of the legislature, which ORS 166.170(2) then implements. As for the application of ORS 166.170(2), the court explained that, even assuming for the sake of argument that the school district is a "district" within the meaning of that subsection, the school district's policy simply is not a prohibited "ordinance" regulating, restricting, or prohibiting the possession of firearms. According to the court, from the text of the statute and its legislative history, it is clear that the legislature's focus in enacting ORS 166.170 was "to have uniform laws throughout the state," not to regulate employment practices. The court then entered a judgment of dismissal.

On appeal, plaintiff contends that the school district's policy violates both ORS 166.170(1) and ORS 166.170(2). In her view, the statutory text is clear evidence of the legislature's intent to preempt any restriction of her possession of a firearm, even if that restriction is contained in an employer's internal workplace policy.

The school district responds, as an initial matter, that plaintiff did not preserve her claim that the policy is preempted by ORS 166.170(1) because she cited only ORS 166.170(2) in her complaint. On the merits, the school district advances several arguments. First, it argues that ORS 166.170 preempts only "regulations"—that is, enactments that have "the force of law," such as "ordinances." Because the school district's policy applies only to employees and does not have the force of law, the school district asserts, it is neither a "regulation" nor an "ordinance" and, thus, is not preempted by ORS 166.170. In any event, the school district contends, even if its policy is an "ordinance," it is not preempted because ORS 166.170 preempts only ordinances enacted by "districts" and the school district is not a "district" as the legislature used that term in the statute.

In support of its conclusion, the school district cites a decision of the Washington Supreme Court, *Cherry v. Municipality of Metro. Seattle*, 116 Wash 2d 794, 808 P2d 746 (1991), regarding that state's similarly worded statute.[2]

---

[2] RCW 9.41.290, at the relevant time in that case, provided, in part:

"The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including * * *

In that case, the court rejected a similar argument to the one that plaintiff advances in this case, concluding that Washington's preemption statute "is intended to preempt regulatory city, town or county firearms laws and ordinances, but does not address internal employment rules limiting on-duty possession of firearms by public employees in the workplace." *Id.* at 798, 808 P2d at 748. Further, the court held that, in enacting the preemption statute, Washington's legislature

> "sought to eliminate a multiplicity of local laws relating to firearms and to advance uniformity in criminal firearms regulation. The Legislature did not intend to interfere with public employers in establishing workplace rules. *The 'laws and ordinances' preempted are laws of application to the general public, not internal rules for employee conduct."*

*Id.* at 801, 808 P2d at 749 (emphasis added). The school district urges us to adopt the same reasoning in this case.

Several *amici curiae* have appeared in support of the school district. Those *amici* include the State of Oregon, the Oregon School Boards Association (OSBA), the Portland Public School District No. 1J (PPS), and the Portland Community College District (PCC). The state urges this court not to construe ORS 166.170 in a way that would limit its ability, along with other public sector employers, to make policies to ensure workplace safety by restricting its employees' possession of firearms. In support of its argument, the state points to United States Supreme Court cases holding that government as employer has broader powers than government as sovereign. According to the state, "an internal workplace policy does not contradict nor interfere with [the] legislative policy choice" to make the legislature the exclusive source of firearm *regulation.*

OSBA notes that schools have a heightened duty to keep students safe, given their *in loco parentis* relationship

---

possession * * *. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law and are consistent with this chapter * * *. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality."

with them. In OSBA's view, "ORS 166.170 does not bar government personnel policies regulating firearms and this court should uphold the right of a government employer to adopt and enforce such a policy."

PPS and PCC contend that the legislature, in enacting ORS 166.170, did not intend to interfere with a public school district's ability to manage its workforce or to control school property. That is, in addition to employment policies, they argue, school districts are not preempted from prohibiting or restricting firearms on school property because that involves the school district's proprietary, not regulatory, function. In support of their argument, PPS and PCC point to ORS 339.312 to 339.377, which are statutes that require school districts to maintain safe school environments.

## II.  ANALYSIS

The parties do not dispute that, when enacting ORS 166.170, the legislature intended to enact a broad preemption statute. They do dispute whether the scope of that preemption extends to the school district's internal workplace policy restricting an employee's ability to carry a firearm while on the job.

Before turning to a resolution of that dispute, however, we must address the posture in which the dispute has been presented to us. As we have noted, plaintiff initiated this action as one for a declaratory judgment, pursuant to ORS 20.080. The school district then moved to dismiss that action for failure to state a claim, pursuant to ORCP 21 A(8), which motion the trial court granted. The granting of that motion was the basis for the trial court's entry of judgment dismissing the declaratory judgment action.

As we have held on previous occasions, a declaratory judgment action is not the proper subject of a motion to dismiss, except for want of a justiciable controversy. As we explained in *Clark v. City of Albany*, 142 Or App 207, 212, 921 P2d 406 (1996),

"[a]s a rule, an action for declaratory judgment may not be dismissed for failure to state a claim. If the complaint presents a justiciable controversy, a motion to dismiss brought under ORCP 21 A(8) should be denied."

*See also Erwin v. Oregon State Bar*, 149 Or App 99, 106, 941 P2d 1094 (1997) ("[A] failure to state a claim is not a proper basis for dismissing a declaratory judgment action."). The proper procedure is for the defendant to answer and for the parties then to submit the matter to the court for a declaration as to the merits of the claim. *See Advance Resorts of America, Inc. v. City of Wheeler*, 141 Or App 166, 180, 917 P2d 61, *rev den*, 324 Or 322 (1996) ("A claim for declaratory relief may be dismissed only if there is no justiciable controversy.").

When the dismissal of a declaratory judgment action was clearly based on a determination of the merits of the claim, however, our practice has been to review that determination as a matter of law and then remand for the issuance of a judgment that declares the rights of the parties in accordance with our review of the merits. *See, e.g., id.* (after reviewing claims on the merits, vacating and remanding with instructions to enter judgment declaration in accordance with our opinion). We follow that practice in this case. Given that the trial court's decision to grant the school district's motion to dismiss clearly was based on a determination of the underlying controversy, we turn our attention to the merits of that decision.

Whether, and the extent to which, a state statute has preemptive effect is a question of legislative intent. *City of Portland v. Jackson*, 316 Or 143, 147-48, 850 P2d 1093 (1993); *State v. Robison*, 202 Or App 237, 241, 120 P3d 1285 (2005). We ascertain the intentions of the legislature by examining the text of the statute in its context, along with any relevant legislative history, and, if necessary, relevant canons of statutory construction. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

A.   *ORS 166.170(2)*

We begin with whether the school district's policy violates ORS 166.170(2) because, frankly, the answer to that question is relatively straightforward. As we have noted, ORS 166.170(2) provides:

"Except as expressly authorized by state statute, no county, city or other municipal corporation or district *may enact civil or criminal ordinances*, including but not limited to zoning ordinances, to regulate, restrict or prohibit the sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms or any element relating to firearms and components thereof, including ammunition. Ordinances that are contrary to this subsection are void."

(Emphasis added.) As the emphasized portion of that subsection makes clear, to establish that the school district violated ORS 166.170(2), plaintiff must demonstrate at least three things. First, she must demonstrate that the school district is a "county, city or other municipal corporation or district" within the meaning of that subsection. Second, she must establish that the school district "enact[ed] [a] civil or criminal ordinance[ ]." And, third, she must demonstrate that any such ordinance regulates, restricts, or prohibits the use of firearms. All three are necessary; plaintiff's failure to demonstrate any one of them is fatal to her claim that the school district's policy violates ORS 166.170(2).

In this case, we need not address whether plaintiff satisfied each of those three prerequisites because it is clear that she has failed to establish that the school district, in adopting its policy, enacted a civil or criminal ordinance.

Plaintiff's only argument on the point is the assertion that " '[p]olicy' and 'ordinance' are synonymous" because both involve "limits on conduct." The school district responds that there is a bit more to the subject than that. According to the school district, in the context of ORS 166.170(2), it is clear that the legislature intended the term "ordinance" to refer to the equivalent of a law or other enactment of a municipal corporation that carries the force of law and is enforceable against the public generally. An internal employment policy, the school district argues, is not such an "ordinance." For the following reasons, we agree with the school district.

■    In the absence of a definition in the statute itself, we assume that the legislature intends a statutory term to be given its ordinary meaning. *PGE*, 317 Or at 611. To ascertain the ordinary meaning of such terms, courts typically look to dictionary definitions. *E.g.*, *Dept. of Rev. v. Faris*, 345 Or 97,

101, 190 P3d 364 (2008); *Pacificorp Power Marketing v. Dept. of Rev.*, 340 Or 204, 215, 131 P3d 725 (2006).

■     When the legislature employs a term of art, however, that term is not necessarily given its ordinary meaning. Instead, we will resort to a specialized dictionary to determine the meaning of the term in its more specialized usage. *See, e.g.*, *Dept. of Transportation v. Stallcup*, 341 Or 93, 99, 138 P3d 9 (2006) ("we give words that have well-defined legal meanings those meanings"); *Tharp v. PSRB*, 338 Or 413, 423, 110 P3d 103 (2005) (terms of art are not given their plain, natural, and ordinary meaning). In the case of specialized legal terms, we ordinarily resort to a legal dictionary to ascertain the particular meaning that the word has come to have in the legal profession. *See State v. Hess*, 342 Or 647, 650, 159 P3d 309 (2007) (resorting to *Black's Law Dictionary* (8th ed 2004) to define the term "stipulation," which the Supreme Court characterized as a "legal term").

The term "ordinance," as it is used in ordinary communications, has both a narrow and a broader meaning. It can refer to "a public enactment, rule, or law promulgated by governmental authority: as * * * a local law or regulation enacted by a city council or other similar body under powers delegated to it by the state." *Webster's Third New Int'l Dictionary* 1588 (unabridged ed 1993). That narrower sense is consistent with the legal usage of the term as "[a] rule established by authority," "a law or statute," and, "[i]n its most common meaning, * * * the enactments of the legislative body of a municipal corporation." *Black's Law Dictionary* 1097 (6th ed 1990). The word "ordinance" also has a broader common meaning, however. At least in some contexts, the term may not be limited to enactments of law but, more generally to an "established rule, policy, or practice." *Webster's* at 1588.

The question for us is which of those definitions the legislature most likely intended when it enacted ORS 166.170(2). Typically, the statutory context in which the term is used makes clear the answer to that question. *See, e.g.*, *State v. Fries*, 344 Or 541, 546, 185 P3d 453 (2008) (context

determines which of multiple definitions is the one the legislature intended). That is certainly so in this case.

To begin with, although the term "ordinance" may have a broader and a narrower definition in the abstract, when the term is used in legislation, it is generally not used as a synonym for the more general "policy." To the contrary, the terms are usually listed separately. *See, e.g.*, ORS 455.469 ("policies and ordinances"); ORS 659.870(1), (2) ("charter provision, ordinance, resolution or policy"); ORS 757.649(3) ("rules, ordinances, policies and service quality standards"). The term "policy" generally refers to a broader statement of desired objectives that is then implemented by ordinances *enacted into law* by local government entities acting in their legislative capacities. *See, e.g.*, ORS 196.684(2) (referring to "[a]mendments to plan policies, maps and implementing ordinances"); *see also* ORS 92.025(3) ("a city or county may enact an ordinance"); ORS 98.850(1)(a) (referring to "the authority of the state and political subdivisions of the state to enact or enforce laws or ordinances"); ORS 131.553(2) (referring to the authority of a "city or county to enact ordinances"); ORS 167.100 ("no local authority shall enact any ordinances"); ORS 215.110(2) ("[t]he governing body may enact, amend or repeal ordinances"); ORS 215.253(1) ("[n]o state agency, city, county or political subdivision of this state may exercise any of its powers to enact local laws or ordinances"); ORS 222.260 ("the governing body of each of the cities shall enact an ordinance"); ORS 267.150(2) ("[t]he board may enact police ordinances"); ORS 368.011(2) ("[a] county may not enact an ordinance"); ORS 447.080 ("[n]o city or county shall enact or enforce any ordinances"); ORS 479.854(1) ("[a] municipality may enact and enforce an ordinance").

Thus, the term "ordinance" generally is employed to refer to something that a government entity "enacts." Both in its ordinary usage and in its more specific legal sense, the term "enact" refers to lawmaking. *Webster's* at 745 (defining "enact" to mean "to establish by legal and authoritative act * * * *esp* : to perform the last act of legislation upon (a bill) that gives the validity of law"); *Black's* at 526 (defining the

same term to mean "[t]o establish by law; to perform or effect; to decree").

Consistently with that general usage, ORS 166.170(2) provides that counties, cities, and municipal corporations and districts may not "*enact* civil or criminal ordinances" that regulate, restrict, or prohibit firearms. (Emphasis added.) Thus, whatever else the term "ordinance" may mean in other contexts, it is clear that, when used in ORS 166.170(2), the term refers to the type of "ordinance" that is enacted into law by governmental entities acting in their legislative capacities. In this case, the school district's internal employment policy simply is not the sort of "ordinance" that ORS 166.170(2) prohibits. The trial court therefore did not err in concluding that the school district's policy does not violate ORS 166.170(2).

B. *ORS 166.170(1)*

■    We turn, then, to the question whether the school district's policy nevertheless violates ORS 166.170(1). That subsection provides:

> "Except as expressly authorized by state statute, *the authority to regulate in any matter whatsoever* the sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms or any element relating to firearms and components thereof, including ammunition, *is vested solely in the Legislative Assembly*."

(Emphasis added.) As we have noted, the trial court concluded that ORS 166.170(1) did not have preemptive effect independent of ORS 166.170(2); rather, the former is, in effect, a statement of broad policy that the latter implements. On appeal, plaintiff contends that the court erred in reaching that conclusion. According to plaintiff, ORS 166.170(1) has preemptive effect independent of ORS 166.170(2). Moreover, she argues, the school district's policy violates that preemptive provision because the policy purports to "regulate" her possession of firearms.

The school district first asserts that plaintiff failed to preserve her contention that its policy violates ORS 166.170(1). According to the school district, because plaintiff cited only ORS 166.170(2) in her complaint, we should limit

our review of the validity of its policy to whether the policy violates that subsection. As for the merits, the school district argues, the preemptive effect of ORS 166.170(1) is limited to the "authority to regulate" firearms. In context, the school district contends, it is clear that the legislature, in preempting the authority to "regulate," focused on the enactment of laws, not the adoption of internal employment policies. To read the provision otherwise, the school district suggests, would lead to the absurd consequence that no person or entity, public or private, could adopt or enforce rules relating in any way to the sale, acquisition, transfer, ownership, possession, storage, transportation, or use of firearms.

Plaintiff replies that, whether absurd or not, the plain language of the statute broadly preempts any regulation—which plaintiff contends refers to any "limit on conduct," whether formally enacted as law or not—of firearms.

We begin with the school district's preservation argument. It is true that plaintiff cited only ORS 166.170(2) in her complaint. She did, however, advance arguments under both provisions in her response to the school district's motion to dismiss. Furthermore, the school district and the court recognized that plaintiff was making arguments under both subsections and addressed them. The school district addressed those contentions in the hearing on its motion to dismiss. In its letter opinion, the court expressly noted plaintiff's arguments under both subsections and rejected all of them. Plaintiff adequately preserved the contentions that she advances on appeal. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). We turn, therefore, to the merits.

We initially address the trial court's conclusion that ORS 166.170(1) has no preemptive effect separate and apart from ORS 166.170(2). In brief, both subsections were enacted by the legislature into law, and both must be given effect as such. ORS 174.010 ("where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"); *see also Liles v. Damon Corp.*, 345 Or 420, 424, 198 P3d 926 (2008) ("We begin with the text and context of the statutes and endeavor to give meaning to all parts of those statutes."); *Waxman v. Waxman & Associates,*

*Inc.*, 224 Or App 499, 508, 198 P3d 445 (2008) (courts are obligated to give effect to all relevant provisions). To be sure, as we note in more detail below, the broad sweep of the phrasing of ORS 166.170(1)—particularly in relation to the more focused wording of the subsection that follows it—is perplexing; if read literally, ORS 166.170(1) would seem to make a redundancy of ORS 166.170(2). But that does not mean that we are free simply to ignore the former provision. The scope of the preemptive effect of each provision will be determined by reference to how they—along with any other relevant context—work together as a whole. We turn to that issue.

As the school district observes, the subject of ORS 166.170(1) is "the authority to regulate" firearms. Said another way, if the school district's adoption of its internal employment policy does not amount to an exercise of its "authority to regulate," then the statute has not been violated. The determinative issue, then, is the intended meaning of the authority to "regulate."

Once again, the ordinary meaning of the term includes both narrow and broader senses. To "regulate" can mean "to govern or direct according to rule * * *; *usu* : to bring under the control of law or constituted authority : make regulations for or concerning ← the industries of a country›." *Webster's* at 1913. That narrower sense conforms to the usage of the term in its legal sense as well. *See Black's* at 1286 (defining "regulation" as, among other things, a "rule or order having force of law issued by executive authority of government"). The same word can be used in a broader sense, however. "Regulate" can also mean "to reduce to order, method, or uniformity : REGULARIZE," without necessarily involving the law. *Webster's* at 1913.

The question for us is which of the two senses the legislature most likely had in mind when it enacted ORS 166.170(1). To answer that question, we once again look to the relevant context of the disputed term. *Fries*, 344 Or at 546.

At the outset, we note that, when the legislature employs the term "regulate" or its variant "regulation" in other statutes, it generally does so in the narrower, legal sense of the word that we have described. *See, e.g.,* ORS

83.635 (relating to "lenders licensed and regulated under the provisions of ORS chapter 725"); ORS 83.715(4) (referring to contracts "regulated by Oregon Revised Statutes 83.710 to 83.750"); ORS 87.142(4) (referring to utilities "regulated by the Public Utility Commission under ORS chapter 757"); ORS 92.325(3)(g) ("[t]imeshares regulated or otherwise exempt under ORS 94.803 and 94.807 to 94.945"); ORS 97.953(11) (organizations "regulated under federal or state law"); ORS 128.640(2)(d) ("child-caring agency regulated under ORS 418.215 to 418.265"); ORS 137.380 ("the manner of the confinement and the treatment and employment of a person shall be regulated and governed by whatever law is then in force"); ORS 196.800(14) (relating to "removal or fill activities [that] are regulated under a state-assumed permit program as provided in 33 U.S.C 1344(g) of the Federal Water Pollution Control Act"); ORS 215.294(1) (relating to railroad handling of "materials regulated under ORS chapter 459 [and 466]"); ORS 227.172(1)(b)(A) ("gaming regulated by the Indian Gaming Regulatory Act"); ORS 279C.320(1) ("Contracts for emergency work are regulated under ORS 279B.080."); ORS 307.471(1)(b)(E) (referring to housing that is "[r]egulated by federal or state law"); ORS 346.140 (referring to compensation that is "regulated by law"); ORS 358.945(3) (referring to "burial regulated under ORS 97.740 to 97.760"); ORS 441.079(1)(b) ("entity that is licensed or regulated under federal or state law"); ORS 446.003(25)(b) ("building or structure regulated under the State of Oregon Structural Specialty Code"); ORS 453.015(2) ("[c]ommon fireworks regulated under ORS 480.110 to 480.165"); ORS 537.090(2) (referring to wells "regulated as a geothermal resource under the applicable sections of ORS chapter 522").

ORS 634.057 provides a useful illustration. It is a state statute that preempts any "ordinance, rule or regulation" regarding the sale or use of pesticides. In *Advocates for Effective Regulation v. City of Eugene*, 160 Or App 292, 295, 981 P2d 368 (1999), we addressed an amendment to a city charter that had been adopted by initiative and that imposed reporting requirements on the use of certain pesticides. Opponents of the initiative challenged it on the ground that it violated ORS 634.057. Supporters of the initiative argued that it did not run afoul of the preemption statute because a

reporting requirement is not a "regulation" within the meaning of the statute. *Id.* at 305-07. We rejected the argument. *Id.* at 308-09. Quoting the same narrow definition of the term "regulate" from *Webster's* that we mentioned earlier in this opinion, we explained that to "regulate" means "bring under the control of law or constituted authority." *Id.* at 308. With that definition in mind, we concluded that the initiative at issue "sets forth an authoritative rule that governs the reporting of hazardous substances" and, as such, constituted a "regulation" within the meaning of the preemption statute. *Id.*

█ The legislature's use of the term "regulate" in ORS 166.170(1) appears to us to have occurred with the same narrow sense in mind. We note that that subsection was enacted as part of a larger bill, House Bill (HB) 2784 (1995), which began with what is now ORS 166.170(1) and (2) and continued with a number of exceptions, codified at ORS 166.171 through ORS 166.175.[3] As we have discussed, the focus of

---

[3] ORS 166.171 provides:

"(1) A county may adopt ordinances to regulate, restrict or prohibit the discharge of firearms within their boundaries.

"(2) Ordinances adopted under subsection (1) of this section may not apply to or affect:

"(a) A person discharging a firearm in the lawful defense of person or property.

"(b) A person discharging a firearm in the course of lawful hunting.

"(c) A landowner and guests of the landowner discharging a firearm, when the discharge will not endanger adjacent persons or property.

"(d) A person discharging a firearm on a public or private shooting range, shooting gallery or other area designed and built for the purpose of target shooting.

"(e) A person discharging a firearm in the course of target shooting on public land that is not inside an urban growth boundary or the boundary of a city, if the discharge will not endanger persons or property."

ORS 166.172 provides:

"(1) A city may adopt ordinances to regulate, restrict or prohibit the discharge of firearms within the city's boundaries.

"(2) Ordinances adopted under subsection (1) of this section may not apply to or affect:

"(a) A person discharging a firearm in the lawful defense of person or property.

"(b) A person discharging a firearm on a public or private shooting range, shooting gallery or other area designed and built for the purpose of target shooting."

ORS 166.170(2) is the preemption of local government authority to "enact civil or criminal ordinances." The exceptions that follow in ORS 166.171 through 166.174 likewise each refer to "ordinances" that a city or county may adopt to "regulate" the possession or discharge of firearms in specified circumstances. In other words, the permitted regulations are referred to as ordinances that cities and counties are allowed to enact.[4]

■      Also relevant to our analysis of the statute is any prior judicial construction of it or related statutes. *See, e.g.,* *State v. Bryan,* 221 Or App 455, 459, 190 P3d 470 (2008), *rev den,* 347 Or 290 (2009) ("Prior construction of a statute by this court is always relevant to our analysis of the statute's text."). In *Starrett v. City of Portland,* 196 Or App 534, 102

---

ORS 166.173 provides:

"(1) A city or county may adopt ordinances to regulate, restrict or prohibit the possession of loaded firearms in public places as defined in ORS 161.015.

"(2) Ordinances adopted under subsection (1) of this section do not apply to or affect:

"(a) A law enforcement officer in the performance of official duty.

"(b) A member of the military in the performance of official duty.

"(c) A person licensed to carry a concealed handgun.

"(d) A person authorized to possess a loaded firearm while in or on a public building or court facility under ORS 166.370."

(The phrase "or court facility" was added to ORS 166.173(2)(d) in 1999. Or Laws 1999, ch 782, § 8.) ORS 166.174 provides:

"Notwithstanding any other provision of law, a city, county or other municipal corporation or district may not adopt ordinances that regulate, restrict or prohibit the possession or sale of firearms in a public building that is rented or leased to a person during the term of the lease."

ORS 166.175 provides:

"(1) Notwithstanding any other provision of law, a city may continue to regulate the purchase of used firearms by pawnshops and secondhand stores.

"(2) As used in this section, 'secondhand store' means a store or business whose primary source of revenue is the sale of used merchandise."

[4] It is tempting to suggest that, when ORS 166.170(1) preempts the "authority to regulate in any matter whatsoever," the legislature had the broader meaning of "regulate" in mind. If the phrase had been "authority to regulate in any *manner* whatsoever," that might be a tenable suggestion. To refer to regulation in any "manner" arguably implicates the nature of the regulation itself. That is not what the statute says, however. Rather, the statute refers to the authority to regulate in any "*matter*" whatsoever, which is another thing altogether. To refer to regulation in any "matter" refers not to the nature of the regulation itself, but to the subjects to which the regulation applies.

P3d 728 (2004), we addressed the scope of the preemptive effect of the very statutes at issue in this case—ORS 166.170(1) and (2). (Oddly enough, no party or *amicus* cited the decision to us in its brief or at oral argument.)

In *Starrett*, the City of Portland leased Pioneer Square to a privately owned company, Entercom, which owned and operated a number of radio stations in the area. *Id.* at 536. Entercom leased the property in order to host a New Year's Eve celebration. To facilitate the celebration, the city authorized Entercom to close certain streets around Pioneer Square and to "adopt and enforce rules of conduct for the event." *Id.* Entercom adopted rules of conduct for the event that included a provision prohibiting any person from entering or remaining at the event while possessing firearms. The rules made no exception for a person who had a license to carry a concealed handgun. *Id.* at 536-37.

The plaintiff in that case, a citizen who was licensed to carry a concealed handgun, initiated a declaratory judgment action challenging the validity of the rule of conduct that prohibited the possession of firearms on city property. According to the plaintiff, the rule was preempted by ORS 166.170(1) and (2). We gave the plaintiff's argument rather short shrift. After quoting both subsections of the statute, we explained that

> "the limits that the pertinent statutes place on a city's authority are limits on the authority to *enact ordinances* that *regulate* firearms. The statutes do not purport to limit the right of private parties to exercise control over property that they rent, lease, or own. In other words, the statutes limit regulatory authority delegated to cities by the legislature * * *."

*Starrett*, 196 Or App at 541-42 (emphasis in original). The plaintiff's argument to the contrary, we continued, "confuses property rights with municipal authority to exercise governmental regulatory power." *Id.* at 543. ORS 166.170, we explained, restricts only "a city's *regulatory* authority—that is, a city's organic authority as a governmental entity." *Id.* at 543-44 (emphasis in original). The relevant statutes, we concluded, do not preempt the authority of a holder of fee title to property to dispose of its own property as it sees fit, including

leasing it to others who exclude from the premises persons otherwise licensed to carry handguns. *Id.* at 544.

To summarize: The ordinary meaning of the words employed in ORS 166.170(1) in context and considered in conjunction with our prior interpretation of the statute suggests that the legislature, in preempting authority to "regulate" firearms intended to target only "regulations" in the sense of enacted laws by municipal authorities acting on their "organic authority as a governmental entity." *See Starrett*, 196 Or App at 543-44. At the least, the foregoing demonstrates that such a reading of ORS 166.170(1) is plausible.

At the same time, plaintiff's reading of ORS 166.170(1) cannot be dismissed out of hand. It, too, is at least plausible. Plaintiff's contention that the statute prohibits authority to "regulate" firearms—in the broader sense that is not limited to enactments of a legislative or quasi-legislative nature—may be given effect without doing violence to the wording of that provision. In fact, it is at least arguable that plaintiff's reading of the wording more closely tracks, at least in a literal sense, the broad and unqualified nature of the declaration of preemption.

Complicating matters is the fact that, as we noted at the outset, the relationship between ORS 166.170(1) and (2) is perplexing. If plaintiff is correct and if ORS 166.170(1) establishes that the legislature has sole authority to "regulate" firearms—in the broadest sense—then ORS 166.170(2) becomes meaningless surplusage. By the same token, if ORS 166.170(1) means only that local governments lack authority to adopt enactments regulating firearms, then the purpose of that subsection becomes unclear, as ORS 166.170(2) already states the same thing in words more specific and precise.

Resort to the legislative history of ORS 166.170 reveals no clear indication as to the legislature's intentions on the precise point before us. It does confirm that the focus of the legislature was on avoiding a patchwork quilt of local government *laws* inconsistently regulating the use of firearms. The carriers of HB 2784 made that same point repeatedly. *See, e.g.*, Tape Recording, Senate Floor Debates, HB 2784, May 30, 1995, Tape 176, Side A (statement of Sen Paul Phillips) (noting that the bill's central purpose was to address

the "patchwork of local restrictions" and to protect a citizen's right to carry firearms "in a law-abiding fashion"; that "[t]his bill means honest, law-abiding citizens can travel around the state to go hunting, to go to shooting clubs, to do whatever they want to do without violating the law"; and that "[t]his law makes sure that those mismashes of local preemptions don't trip up the honest guy"); Tape Recording, House Floor Debates, HB 2784, Apr 12, 1995, Tape 82, Side A (statement of Rep Veral Tarno) (stating that the bill was necessary to ensure uniform statewide standards and that it "would pre-empt local government authority to regulate sale, ownership, transfer, possession, and use of firearms").

After the bill's passage, the Governor vetoed it. The veto message demonstrates that the Governor understood the legislature's focus to be on local government enactments:

"This bill eliminates the ability of city and county governments to regulate firearms within their borders. The bill would require statewide laws to address many matters which I believe are more properly a local choice.

"As an example, the Portland Metropolitan area has unique problems in the area of crime and violence. There may be a legitimate need for the governments to tailor firearm regulations that assist law enforcement. Under this bill the only way this could be accomplished is to have the Legislature enact a state law that would apply equally to Curry, Douglas and Malheur counties. This is not an arena where a 'one-size-fits-all' approach is appropriate. Local governments and law enforcement agencies need the flexibility to fashion local solutions to these local problems."

House Journal, First Special Session, HB 2784, July 21, 1995 (letter from Gov John A. Kitzhaber). When the House voted to override the veto, Representative Tarno again restated the general purpose of the legislation:

"This is the gun bill that we passed earlier this session—[the] preemption bill that would prohibit local jurisdictions from establishing their own gun control regulations—leaving it up to the state legislature to deal with that issue. I ask for your passage."

Tape Recording, House Floor Debates, HB 2784, July 28, 1995, Special Session, Tape 2, Side A (statement of Rep Veral Tarno).[5]

The legislative history, then, shows that the legislature was concerned with the relatively narrow problem of local governments enacting a patchwork of conflicting *laws* concerning firearms. We have found nothing in that legislative history suggesting that the legislature intended the scope of its declaration of preemption in ORS 166.170(1) to reach more broadly to such things as internal employment policies and management directives.

That said, we cannot draw too much from that conclusion. The fact that a particular problem precipitated a bill does not necessarily mean that the legislature intended the enactment to be given only such meaning as will address that particular problem; often, legislatures respond to particular issues by enacting very broadly worded statutes. *See, e.g., Hamilton v. Paynter*, 342 Or 48, 55, 149 P3d 131 (2006) ("the

---

[5] We are aware of one instance in which a legislator asked a question during a hearing on the bill about the scope of an exception to the preemption legislation, which raised the issue whether the legislation would have the effect of restricting the authority of a county, as a property owner, to restrict the use of weapons on its property. Specifically, the legislator asked whether the exception that permits cities and counties to restrict firearms in "public places" would apply to county courthouses:

"* * * [I]n terms of [the portions of the bill relating to public buildings], currently the Uniform Trial Court Rules prohibit bringing any kind of firearm, loaded or otherwise, into the Multnomah County Courthouse. We've had several incidents at the Multnomah County Courthouse in terms of psychologists being blown away by clients, etc. Would this bill prohibit the Uniform Trial Court Rules from prohibiting either loaded or unloaded firearms in a public building, as I read [those provisions]?"

Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law and Judicial Administration, HB 2784, Mar 2, 1995, Tape 32, Side B (statement of Rep Kate Brown). The committee's legal counsel responded, "Off the top of my head, I believe that's covered by state statute already. Courts are permitted to prohibit [that]. And I'll double check that." *Id.* (statement of Committee Counsel Milt Jones). As is clear, the colloquy concerned the scope of an *exception* to the preemption legislation, not to the scope of the preemptive provisions themselves. Moreover, the answer of counsel that a state statute already covered the matter made the legislator's question a moot point. Nothing in the colloquy, or in any other portion of the legislative history, suggests that any legislator—much less the legislature as a whole—thought that what became ORS 166.170(1) restricted the authority of a property owner to restrict firearms on the owner's property by means other than enacted ordinances.

statutory text shows that, even if the legislature had a particular problem in mind, it chose to use a broader solution"); *South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531, 724 P2d 788 (1986) ("Statutes ordinarily are drafted in order to address some known or identifiable problem, but the chosen solution may not always be narrowly confined to the precise problem. The legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention.").

■ Resort to relevant canons of construction, however, leads us to the conclusion that, consistently with what the legislative history suggests, the legislature intended the preemptive effect of ORS 166.170(1) to be limited to the lawmaking authority of local governments. One such canon of construction is that "we assume that the legislature did not intend an unreasonable result." *State v. Bordeaux*, 220 Or App 165, 175, 185 P3d 524 (2008); *accord State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996). Plaintiff's proposed construction of ORS 166.170(1) would apply to any person or entity, public or private, seeking to place "limits on conduct" relating to firearms. If plaintiff were correct in her reading of ORS 166.170(1), the statute would apply not merely to public school districts, but also to private school districts, as well as other private employers, private property owners, and even parents who seek to place limits on the possession of firearms in their office buildings or homes. We regard it as unlikely in the extreme that the legislature intended ORS 166.170(1) to reach that far.

■ Another pertinent canon of construction is that, when all else fails, the courts will attempt to determine what the legislature would have done had it thought of the problem. *Carlson v. Myers*, 327 Or 213, 225, 959 P2d 31 (1998). In this case, based on the text of the statute in context, and in light of its legislative history, it seems that the legislature was concerned about Oregon citizens traveling around the state through a "patchwork" of inconsistent laws who were, perhaps unknowingly, violating local firearms restrictions. As we have noted, the school district's policy applies only to its employees; it does not apply to third parties who come

onto the school district's property. Given that fact, we conclude that, had the legislature expressly confronted the issue of an employment relationship, it likely would have deemed that to be an issue entirely unrelated to the purpose of the enactment of ORS 166.170(1).

In short, although we disagree with the trial court's rationale—that ORS 166.170(1) does not have independent preemptive effect—we agree with the court's bottom-line conclusion that the school district's policy does not violate ORS 166.170(1). In our view, the school district's internal employment policy does not represent the sort of exercise of the "authority to regulate" firearms that the statute preempts. Because, as we have noted, the trial court erred in dismissing the declaratory judgment action rather than issuing a judgment containing a declaration as to the matter in dispute, we must vacate the judgment and remand for entry of a judgment declaring that the school district's policy is not preempted by ORS 166.170.

Vacated and remanded with instructions.