Argued and submitted July 31, 2007, conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed May 21, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FELIX ANTONIO P. BORDEAUX,
*Defendant-Appellant.*

Multnomah County Circuit Court
030432183; A125123

185 P3d 524

Eric R. Johansen, Senior Deputy Public Defender, argued the cause for appellant. With him on the briefs were Peter A. Ozanne, Executive Director, Office of Public Defense Services, and Peter Gartlan, Chief Defender, Legal Services Division.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for criminal mistreatment in the first degree, ORS 163.205(1)(a),[1] assigning error to the trial court's denial of his motion for a judgment of acquittal. The issue presented is whether defendant's conduct in lying to emergency room personnel about the cause of his son's injuries—namely, that they had been inflicted by defendant—constitutes withholding necessary and adequate medical attention within the meaning of the criminal mistreatment statute. We conclude that it does not and reverse. Because of that disposition, it is unnecessary for us to reach defendant's other assignments of error related to his sentencing.

The material facts are not disputed. D, defendant's six-month-old son, suffered second-degree burns to the side of his face one evening while defendant was home alone caring for him. Blades, D's mother and defendant's girlfriend, was at work at the time. At some point during the evening, defendant called D's grandmother, telling her that he had placed D's head under the tub spout to rinse his hair after he had defecated on himself during a bath, and that his skin was peeling. The grandmother told him to call Blades at work, which he did. He told Blades that he had put D under the shower to rinse him off and that, while drying him off afterwards, he noticed that D's skin had started peeling. He said that he did not think that he had burned D, but was not sure. Blades got a ride home from work and called 9-1-1. The 9-1-1 operator told her to take D to the hospital as soon as possible. Blades asked a neighbor for a ride and Blades, the neighbor, and defendant then took D to the hospital.

At the emergency room, defendant told Bubb, the triage nurse who first saw D, that he had been holding D in the

---

[1] ORS 163.205(1)(a) provides:

"A person commits the crime of criminal mistreatment in the first degree if:

"(a) The person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person[.]"

shower and noticed his face peeling afterwards. Bubb immediately had a "very high suspicion" that D's injury arose from abuse. Defendant told Murray, the emergency room doctor who treated D, that he had taken D into the shower but did not notice any burns until he saw that the skin was sloughing off of D's face. He said that D did not cry. Defendant did not tell anyone at the hospital that the injury was nonaccidental. However, because defendant's story did not match the burn that Murray saw on D's face and the injuries appeared suspicious for child abuse, the police were contacted.[2] D was treated for second-degree burns on his face and transferred to another hospital for "protective admission."

Based on that incident, defendant eventually was charged with two counts of criminal mistreatment in the first degree, one (Count 2) alleging that he had "unlawfully and knowingly cause[d] physical injury to [D] by burning him with a hot liquid," ORS 163.205(1)(b); and the other (Count 3) alleging that he "did unlawfully and knowingly withhold necessary and adequate medical attention from [D] by lying to medical personnel about the cause of [D's] facial burn[.]"[3] ORS 163.205(1)(a).

At trial, the state elicited testimony from Murray, the emergency room doctor, as to the implications of giving false information when seeking medical care:

"Q. Would you tell the jury if you get a false history, how can that impact treatment?

"A. Well, obviously the story is the most important thing when you're seeing a patient because the story is what tells you about what has happened to the patient, gives an idea about what the illness could be or what are the causes, what are the things you need to do to help that person's health.

"Q. Is child abuse a recognized medical diagnosis?

"A. Yes, it is.

---

[2] Murray also was concerned that D had other abrasions and scratches that appeared inconsistent with defendant's and Blade's explanation of them.

[3] Defendant was charged with a third count of first-degree criminal mistreatment (Count 1) based on allegations that he had caused abrasions to the other side of D's face during a separate incident. He was acquitted of that count.

"Q. If a parent presents to the emergency room and lies about child abuse, about trauma that the child has suffered, how can that impact the child's long[-]term health?

"A. Well, the biggest thing about child abuse is trying to prevent the child from being injured again. If there is not a story that the injuries that were inflicted were done by someone else or intentionally, then you don't—you are deprived of that opportunity to protect that child from being injured again.

"* * * * *

"Q. What if you don't get the chance to diagnose child abuse?

"A. Biggest thing there might be a risk the child would be injured again by another event which might be anything."

Heskett, a CARES pediatrician who examined D the day after his injury, testified similarly. She explained that child physical abuse is a recognized medical diagnosis and that the danger in providing a false medical history to conceal child abuse is that "[t]he child could conceivably[,] if left in the care of that individual, end up with further injuries." She stated that "part of the treatment is to make sure we ensure the safety of the child."

At the close of the state's evidence, defendant moved for a judgment of acquittal with respect to Count 3, arguing that there was no evidence to indicate that defendant prevented any adequate or necessary medical care from being administered to D as contemplated by the statute. The state countered that, by lying about what had happened, defendant withheld from D's medical providers a complete and accurate history, thereby creating a risk that child abuse would not have been diagnosed and treated. According to the state, "[t]he fact that [defendant's] lies didn't work does not mean that he then did obtain adequate medical care." The state did not contend that defendant withheld medical attention for D's burns by his failure to provide an accurate history, only that he withheld medical attention for child abuse. The trial court denied defendant's motion, and the jury returned a guilty verdict on both counts.

■ On appeal, defendant argues that the trial court erred in denying his motion for a judgment of acquittal on Count 3.[4] Defendant concedes that the evidence at trial sufficiently established that he lied about the cause of D's injuries, but he contends that lying to medical personnel in the emergency room of a hospital about the cause of the injuries does not, as a matter of statutory interpretation, constitute "withholding" necessary and adequate medical attention from that person for purposes of ORS 163.205(1)(a). According to defendant, all that is required under the statute is that he took D to the hospital for treatment.[5] The state's position, on the other hand, is that, by withholding information that bore on whether D had been subjected to abuse (that is, that D's injury was not accidental), defendant impeded the ability of medical personnel to diagnose child abuse and therefore to treat D by protecting him from a risk of future injury, thus constituting withholding necessary and adequate medical attention within the meaning of ORS 163.205(1)(a).

■ Where, as here, the dispositive issue turns on the meaning of a statute, we review the trial court's denial of a motion for a judgment of acquittal for legal error, following the interpretative methodology outlined in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143

---

[4] Defendant does not contest on appeal his conviction on Count 2 for knowingly causing the physical injuries to D.

[5] At trial and in his brief on appeal, defendant also argued that, because he did nothing that actually *resulted* in medical care being withheld from D (indeed, child abuse *was* diagnosed in spite of defendant's statements), defendant cannot be held criminally liable under ORS 163.205(1)(a). However, at oral argument, defendant appeared to agree with the state that, under *State v. Damofle/Quintana*, 89 Or App 620, 750 P2d 518, *rev den*, 305 Or 671 (1988), the *consequences* of defendant's conduct are not relevant to the analysis. We agree. In *Damofle/Quintana*, the issue was whether the defendants had, with criminal negligence, withheld adequate "physical care" from their dependent children for purposes of a related statute—second-degree criminal mistreatment, ORS 163.200(1). That statute employs language identical to that used in the pertinent phrase of ORS 163.205(1)(a), except with respect to the mental state required. In response to the defendants' argument that, without a requirement of actual physical harm, the statute was unconstitutionally vague, we held that "such a construction would be inconsistent with the clear language of the statute, which focuses only on the withholding of care, not its consequences." *Damofle/Quintana*, 89 Or App at 625. That conclusion applies here as well. *See also State v. Crosby*, 342 Or 419, 428-29, 154 P3d 97 (2007) (the object of the mental state depends on how the substantive statute uses the term). The mental state "knowingly" as used in ORS 163.205 (1)(a) refers to conduct—the withholding of "food, physical care or medical attention."

(1993). *State v. Stamper*, 197 Or App 413, 416, 106 P3d 172, *rev den*, 339 Or 230 (2005); *State v. Rodarte*, 178 Or App 173, 176, 35 P3d 1116 (2001).

Our starting point for determining the legislature's intent under the *PGE* methodology is to examine the text of the statute in context, giving undefined words of common usage their plain meaning. *PGE*, 317 Or at 610-11. If the legislature's intent is clear from that exercise, our inquiry ends; if it is not, we examine the legislative history of the provision, and, if necessary, maxims of statutory construction. *Id.* at 611-12.

As noted, ORS 163.205(1)(a) provides that a person commits the crime of first-degree criminal mistreatment if the person,

> "in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person[.]"

The key, for purposes of this case, is the meaning of the phrase "withholds necessary and adequate * * * medical attention."[6] Defendant contends that the issue is resolved at the first *PGE* level by reference to the word "withhold." Because the term is undefined in the statute, we apply its ordinary meaning. *State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006) ("Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense.") "Withhold" is defined in pertinent part to mean, "**1:** hold back : keep from action : CHECK, RESTRAIN * * * **2:** to desist or refrain from granting, giving or allowing : keep in one's possession or control : keep back * * *." *Webster's Third New Int'l Dictionary* 2627 (unabridged ed 2002). According to defendant, because, "after causing the injuries, defendant did everything he could do to provide medical attention to [D]," including contacting the grandmother for advice and taking

---

[6] Defendant does not dispute that the first element of the offense—his responsibility for D's care—was satisfied nor does he dispute that he acted "knowingly."

D to the emergency room for treatment for his injuries, he did not "withhold" medical attention within the meaning of that word. The flaw in defendant's argument is that it ignores the remainder of the statutory phrase.

The state's position, on the other hand, is dependent on the legislature's use of the adjectives "necessary" and "adequate" to modify the term "medical attention." The definition of "necessary" includes "that cannot be done without : that must be done or had : absolutely required : ESSENTIAL, INDISPENSABLE ‹food is ˷ for all› ‹was ˷ to her peace of mind› * * *‹took all ˷ steps›." *Webster's* at 1511. "Adequate" means, as relevant here "equal to, proportionate to, or fully sufficient for a specified or implied requirement, *often* : narrowly or barely sufficient : no more than satisfactory." *Id.* at 25. "Sufficient," in turn, means "marked by quantity, scope, power, or quality to meet with the demands, wants, or needs of a situation or of a proposed use or end." *Id.* at 2284. Thus, the term "adequate" has meaning only in the context of some "specified or implied requirement," "situation," or "proposed use or end." As contemplated in ORS 163.205(1)(a), that "implied requirement" or "proposed use" could refer to the obtaining of medical care. So understood, medical attention, even if obtained, may nonetheless be "inadequate" if it is insufficient to allow for necessary medical treatment. Thus, "withholding necessary and adequate * * * medical attention" conceivably could encompass conduct that materially impedes or prevents necessary medical treatment, including failing to provide inculpatory information if needed to treat the medical condition of child abuse. In other words, the state's interpretation is not "wholly implausible" under the words of the statute. *See Godfrey v. Fred Meyer Stores*, 202 Or App 673, 686, 124 P3d 621 (2005), *rev den*, 340 Or 672 (2006) ("[T]he threshold of ambiguity is a low one. It does not require that competing constructions be equally tenable. It requires only that a competing construction not be 'wholly implausible.' ") (quoting *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994)).

However, the state's formulation is not the *only* plausible reading of the statutory provision. We note, first, that the statute does not, by its terms, expressly prohibit the withholding of *information* about the cause of an injury

necessitating medical consideration. Nor does it refer specifically to the withholding of necessary and adequate medical *care* or medical *treatment*. *See* ORS 174.010 (in construing statutes, courts are not to insert what has been omitted or to omit what has been inserted). Rather, it prohibits the withholding of medical "attention." "Attention" is defined as:

> "**1:** the act or state of attending : the application of the mind to any object of sense or thought * * * : CONSIDERATION, NOTICE * * * : mental power of attending ‹call ~ to an error› ‹fix ~ on a moving light› **2:** consideration with a view to action : observant care ‹call this to the manager's ~›. * * * **4** * * * **b:** the process of focusing consciousness to produce greater vividness and clarity of certain of its contents relative to others * * *."

*Webster's* at 141. Thus, to withhold "attention" can be understood to mean the keeping back or restraint of focused consciousness or consideration with a view to further action, specifically as it applies here, medical consciousness or medical consideration. This suggests that a different effort is required with respect to the provision of medical services than if the legislature had, for example, used the term "medical care" or "medical treatment." *See generally State v. Glaspey*, 337 Or 558, 564-65, 100 P3d 730 (2004) (legislature's use of different terms in same statute suggested terms have different meaning).

Moreover, it is possible to read the word "adequate" as used in ORS 163.205(1)(a) to refer simply to the nature of the medical attention sought—that is, that the attention sought be of an appropriate kind from appropriate medical personnel[7]—rather than describing the quality of care (as the state's construction would require). Thus, reading the phrase "necessary and adequate * * * medical attention" as a whole, it also is reasonably plausible that the legislature intended to require only that an injury or medical condition be brought to the consideration or consciousness of appropriate medical personnel—and nothing more—in order to avoid criminal sanctions under the statute. In other words, it is possible,

---

[7] For example, bringing an injured child to a veterinarian for treatment may be inadequate medical attention under the statute.

under a plain reading of the text of the statute, that the legislature did *not* intend ORS 163.205(1)(a) to operate to criminalize the withholding of inculpatory information as to the cause of a child's injuries.

That ambiguity is not resolved by reference to the statute's context. *Bridgeview Vineyards, Inc. v. State Land Board*, 211 Or App 251, 262, 154 P3d 734, *rev den*, 343 Or 690 (2007) ("At the first level of analysis, we do not consider the text in isolation; rather we employ rules of textual construction that bear directly on how to read the text, and we are careful to consider the text in context."). Context includes "other provisions of the same statute and other related statutes," as well as relevant judicial constructions of those statutes. *PGE*, 317 Or at 611; *State v. Thompson*, 166 Or App 370, 377, 988 P2d 762, *rev den*, 331 Or 192 (2000). For example, ORS 163.206 provides *exceptions* to the applicability of ORS 163.205—including with respect to the provision of medical attention—but reveals nothing of the legislature's intent as to what conduct *is* definitively covered by the wording "withholds necessary and adequate * * * medical attention."[8] Additionally, although language similar to ORS 163.205(1)(a) appears in the definition of "support" for purposes of the crime of criminal nonsupport, ORS 163.555, *see* ORS 163.505 (" '[s]upport' includes, but is not limited to, necessary and proper * * * medical attention"), which was enacted two years before the criminal mistreatment statutes, the phrasing is not identical. More to the point, there is nothing in the legislative history of the statute, nor are there prior judicial constructions of it, that would aid us in resolving the specific ambiguity identified here.

Because the intent of the legislature is unclear from the statute's text and context, we proceed to an examination of the legislative history. *PGE*, 317 Or at 611-12. In this case,

---

[8] Under ORS 163.206, ORS 163.205 does not apply to a person acting pursuant to a court order, advance directive, or power of attorney for health care (subsection (1)); to a person "withholding or withdrawing life-sustaining procedures or artificially administered nutrition and hydration pursuant to ORS 127.505 to 127.660" (subsection (2)); when a competent person refuses medical care (subsection (3)); to a person who provides "spiritual treatment * * * in lieu of medical treatment" under certain circumstances (subsection (4)); or to an accredited practitioner of spiritual treatment (subsection (5)).

the legislative history provides no guidance as to whether, by employing the phrase "withholds necessary and adequate * * * medical attention," the legislature intended to encompass the withholding of inculpatory information necessary to diagnose and treat child abuse.[9] As a result, we turn to maxims of statutory construction. *Id.* at 612 ("If, after consideration of text, context, and legislative history, the intent of the legislature remains unclear, then the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty.").

Here, two maxims are instructive. First, we assume that the legislature did not intend an unreasonable result. *State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996); *State v. Rodriguez*, 217 Or App 24, 33-34, 175 P3d 471 (2007). In this case, construing the statute as the state urges would essentially require a person to confess to one crime (criminal mistreatment under ORS 163.205(1)(b)(A) for causing physical injury) to avoid being guilty of another (criminal mistreatment under ORS 163.205(1)(a) for withholding medical attention). It is difficult to imagine that the legislature would have intended such an unreasonable result, particularly as it seems to create a *disincentive* for abusive parents to seek medical treatment for their injured children. Moreover, taken to its logical extreme, the state's formulation would impose an obligation to independently confess to instances of child abuse, even absent any physical injury. That is, a person would be required under ORS 163.205(1)(a) to bring a child in for treatment of child abuse, even if the child was not otherwise in need of medical care.

A second maxim—which calls for the avoidance of constitutional issues—is also applicable. *State v. Stoneman*, 323 Or 536, 540 n 5, 920 P2d 535 (1996); *Rodriguez*, 217 Or

---

[9] The language at issue has been in the statute since its enactment in 1973. Or Laws 1973, ch 627, § 3. The bill as introduced prohibited the mistreatment or maltreatment of people over age 65. Senate Bill (SB) 780 (1973). According to the prime sponsor of the bill, it was designed to protect against the mistreatment of elderly people in public and private nursing facilities. Testimony, Select Committee on Aging, SB 780, Apr 9, 1973, Tape 4, Side 2 (statement of Sen Edward Fadeley). In an effort to broaden the bill, and to ensure that it would cover the failure to act, such as the withholding of food or privileges, and psychological bullying, the original language was replaced by the present phrase modeled, in part, on the child abuse statutes. *See generally* Testimony, Select Committee on Aging, SB 780, Apr 9, 1973.

App at 34. The state's proposed interpretation of the statute arguably infringes on the right under Article I, section 12, of the Oregon Constitution not to be compelled to testify against oneself. The argument would be that a state law compelling a person to confess to the crime of child abuse—to a person who, in turn, is required by state law to report that crime to state law enforcement officials—as the only means of avoiding criminal liability for another crime, violates the protections of Article I, section 12, against being compelled to furnish evidence against oneself. *See State v. Vondehn*, 219 Or App 492, 500, 184 P3d 567 (2008) (explaining that Article I, section 12, in addition to prohibiting the use of testimonial evidence acquired as a result of its violation, "also protects a person from being compelled in the first instance to furnish evidence"). We need not and do not resolve that argument (indeed we express no opinion as to the likelihood of its success). *See Rodriguez*, 217 Or App at 34 ("the avoidance cannon is commonly invoked when there is even a tenable argument of unconstitutionality") (citing *Westwood Homeowners Assn., Inc. v. Lane County*, 318 Or 146, 160, 864 P2d 350 (1993), *adh'd to as modified on recons*, 318 Or 327, 866 P2d 463 (1994)). Rather, under the maxim, we assume that the legislature intended the construction that would *not* lead to possible constitutional problems. *See, e.g., Stoneman*, 323 Or at 540 n 5. In this case, that leads us to reject the state's proposed construction.

In sum, we conclude that the legislature did not intend the prohibition in ORS 163.205(1)(a) against "withhold[ing] necessary and adequate * * * medical attention" to encompass the failure to disclose to medical personnel inculpatory information about the cause of a child's injuries. In light of that conclusion, the trial court erred in denying defendant's motion for a judgment of acquittal on Count 3 of the indictment.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.