Argued and submitted June 6, affirmed December 18, 2013, petition for review
denied May 29, 2014 (355 Or 567)

Gerald Alex CONRADY,
*Plaintiff-Appellant,*
*and*

Kathy Ann CONRADY,
*Plaintiff,*
*v.*

LINCOLN COUNTY,
*Defendant-Respondent.*

Lincoln County Circuit Court
111143; A150995

316 P3d 413

Russell L. Baldwin argued the cause and filed the briefs for appellant.

Kristin H. Yuille argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Armstrong, Judge.

DUNCAN, P. J.

**DUNCAN, P. J.**

Under Lincoln County's zoning regulations, a "firearms training facility" is allowed as a conditional use within areas zoned for timber conservation, and a property owner who wishes to establish a firearms training facility in such an area must apply for a conditional use permit. The question in this case is whether that permit requirement is preempted under state law—more specifically, under ORS 166.170, ORS 166.171, and ORS 166.176, three statutes that concern preemption of local firearms regulation. The circuit court issued a declaratory judgment ruling that the county's ordinance was not preempted. For the reasons that follow, we agree and affirm the judgment of the circuit court.

## I. BACKGROUND

For purposes of this appeal, the relevant background facts are not in dispute. Plaintiffs own real property in Lincoln County that is zoned for timber conservation (T-C), and they intended to operate a shooting range on that property.[1] The county insisted that, in order to operate a shooting range lawfully, plaintiffs first had to obtain a conditional use permit for a "firearms training facility," as required by county code. The relevant ordinance, Lincoln County Code (LCC) 1.1375(2)(m), was enacted in 1994 and provides:

"(2) Conditional Uses Permitted

"The following uses may be permitted [in a T-C zone] subject to provisions of subsection (3) of this section and applicable provisions of LCC 1.1401 to 1.1499, 1.1501 to 1.1599, 1.1601 to 1.1699, and 1.1901 to 1.1999:

"*****

"(m) Firearms training facility."

LCC 1.1601, in turn, provides that the "[l]ocation and operation of designated conditional uses shall be subject to review and authorized only by issuance of a Conditional Use Permit," and LCC 1.1605 to 1.1630 set forth additional standards and procedures for obtaining a conditional use permit.

---

[1] Only plaintiff Gerald Alex Conrady appeals. For ease of reference, we do not distinguish between "plaintiff" and "plaintiffs" for purposes of appeal.

Plaintiffs took the position that LCC 1.1375(2)(m) was void under state law and that the county could not lawfully require them to obtain a conditional use permit prior to using the property as a shooting range. To support their position, plaintiffs relied on three statutes that, in their view, established that the county was preempted from requiring conditional use permits for shooting ranges. As detailed below, the first of those statutes, ORS 166.170, was enacted in 1995 and sets forth a general rule that the state—and not a local government—is authorized to regulate the sale, acquisition, transfer, ownership, possession, storage, transportation, or use of firearms, except when expressly authorized by the legislature. The second statute, ORS 166.171, was enacted at the same time and provides express authority for counties to regulate the discharge of firearms within their boundaries, but that authority is subject to exceptions—notably, an exception that preempts counties from applying their ordinances to "[a] person discharging a firearm on a public or private shooting range, shooting gallery or other area designed and built for the purpose of target shooting." ORS 166.171(2)(d). The third statute, ORS 166.176, was enacted two years later and, generally speaking, allows counties to enforce certain ordinances related to the discharge of firearms that were adopted before the earlier statutes, ORS 166.170 and ORS 166.171, went into effect. However, ORS 166.176 also includes an exception concerning shooting ranges. ORS 166.176(2) ("Subsection (1) of this section does not apply to * * * [o]rdinances regulating, restricting or prohibiting the discharge of firearms on a shooting range or in a shooting gallery or other area designed and built for the purpose of target shooting.").

The county disagreed with plaintiffs' reading of those preemption statutes, particularly with regard to the scope of the shooting-range exceptions in ORS 166.171(2)(d) and ORS 166.176(2), and adhered to its position that the permit requirement in LCC 1.1375(2)(m) was valid. Eventually, plaintiffs filed this action to resolve the parties' dispute regarding the effect of ORS 166.170, ORS 166.171, and ORS 166.176. Their complaint requested a declaration "that [the county] is preempted by state law from requiring plaintiffs to have a conditional use permit prior to lawfully discharging firearms on plaintiffs' rural property."

The parties essentially agreed that the preemption question could be decided as a matter of law, and plaintiffs and the county each filed a motion for summary judgment. Plaintiffs, for their part, argued that the preemption statutes demonstrated clear legislative intent to exempt shooting ranges from all county regulation. The county, on the other hand, argued that, although the shooting-range exceptions in the preemption statutes limit the county's ability to regulate what happens *on* an established shooting range, the county still has the authority to decide whether to permit a shooting range in the first instance—*i.e.*, to require a conditional use permit for the operation of a firearms training facility in a T-C zone.

The circuit court agreed with the county's understanding of the preemption statutes:

> "With respect to the Plaintiffs' and the [county's] claims for declaratory relief, the Court declares that the Lincoln County Code 1.1375(2)(m) requirement to obtain a conditional use permit for a shooting range as a firearms training facility in a Timber Conservation Zone is not preempted by ORS 166.170, [ORS] 166.171, and ORS 166.176[.]"

Plaintiffs now appeal that judgment, reprising their arguments regarding the effect of the preemption statutes on LCC 1.1375(2)(m).[2]

## II. ANALYSIS

The question before us is whether the legislature, by enacting ORS 166.170, ORS 166.171, and ORS 166.176, intended to preempt a county zoning ordinance that requires a landowner to obtain a conditional use permit before using the land as a shooting range. In wending our way through the preemption statutes, we apply the methodology described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), discerning the legislature's intent by focusing first on the text, context, and any useful legislative history, then proceeding to general maxims of statutory construction if the legislature's intent remains obscure.

---

[2] Plaintiffs also asserted a quiet title claim in their complaint, which the trial court dismissed. To the extent that plaintiffs separately challenge the dismissal of that claim in this appeal, we reject that challenge without discussion.

As noted, the preemption statutes implicated in this action were enacted in the mid-1990s. Two of those statutes, ORS 166.170 and ORS 166.171, were enacted together in 1995 as part of the same bill, House Bill (HB) 2784. As we have observed in prior cases, the legislative history of HB 2784 is replete with references to the overarching problem at which the bill was aimed: the "patchwork" of local regulations facing gun owners who traveled throughout the state. *See, e.g., Doe v. Medford School Dist. 549C*, 232 Or App 38, 57, 221 P3d 787 (2009) (quoting legislative history that confirms "the focus of the legislature was on avoiding a patchwork quilt of local government laws inconsistently regulating the use of firearms" and that the "carriers of HB 2784 made that same point repeatedly" (emphasis omitted)). To that end, the first section of the enacted bill, now codified as ORS 166.170, sets forth the general rule of preemption for firearms-related regulations:

"(1)   Except as expressly authorized by state statute, the authority to regulate in any matter whatsoever the sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms or any element relating to firearms and components thereof, including ammunition, is vested solely in the Legislative Assembly.

"(2)   Except as expressly authorized by state statute, no county, city or other municipal corporation or district may enact civil or criminal ordinances, including but not limited to zoning ordinances, to regulate, restrict or prohibit the sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms or any element relating to firearms and components thereof, including ammunition. Ordinances that are contrary to this subsection are void."

Much of plaintiffs' argument focuses on that general preemption statute and our application of the statute in *Oregon Firearms v. Board of Higher Education*, 245 Or App 713, 264 P3d 160 (2011). In that case, we held that ORS 166.170 preempted an administrative rule of the Oregon State Board of Higher Education and the Oregon University System that imposed sanctions on persons who possessed or used firearms on university property. We reasoned that the administrative rule was "an exercise of an 'authority

to regulate' firearms that is *not expressly authorized by the Legislative Assembly,* and that it is preempted by ORS 166.170(1)." 245 Or App at 723 (emphasis added). In plaintiffs' view, "[t]his court need not revisit its prior determination in [*Oregon Firearms*] to correctly apply the legislative mandate."

However, as the county points out, there is a crucial difference between this case and *Oregon Firearms*: The government actors in that case, the Oregon State Board of Higher Education and the Oregon University System, were not *cities or counties.* The second and third sections of HB 2784, codified, respectively, as ORS 166.171 and ORS 166.172, created different rules for those local governments. ORS 166.171(1) expressly authorizes counties to "adopt ordinances to regulate, restrict or prohibit the *discharge of firearms* within their boundaries." (Emphasis added.) ORS 166.172(1) provides the same express authorization to cities. In both cases, however, the express authorization is subject to exceptions. With regard to counties, ORS 166.171(2) provides:

"Ordinances adopted under subsection (1) of this section *may not apply to or affect*:

"(a) A person discharging a firearm in the lawful defense of person or property.

"(b) A person discharging a firearm in the course of lawful hunting.

"(c) A landowner and guests of the landowner discharging a firearm, when the discharge will not endanger adjacent persons or property.

"(d) *A person discharging a firearm on a public or private shooting range, shooting gallery or other area designed and built for the purpose of target shooting.*

"(e) A person discharging a firearm in the course of target shooting on public land that is not inside an urban growth boundary or the boundary of a city, if the discharge will not endanger persons or property."[3]

---

[3] Another exception was later added for "[a]n employee of the United States Department of Agriculture, acting within the scope of employment, discharging a firearm in the course of the lawful taking of wildlife." Or Laws 2009, ch 556, § 1. That addition is not material to our analysis.

(Emphasis added.) ORS 166.172(2) provides a shorter list of exceptions for cities, but likewise includes an exception for "[a] person discharging a firearm on a public or private shooting range, shooting gallery or other area designed and built for the purpose of target shooting." ORS 166.172(2)(b).

In its next regular session, the legislature specifically revisited the sweeping preemptive effect of its 1995 legislation on county ordinances. As we will describe in more detail, the change was prompted because one county in particular—Deschutes County—was concerned that the 1995 statutes had invalidated a local ordinance that allowed for the creation of "no-shooting zones" within the county. In response to that concern, the legislature enacted ORS 166.176, which essentially "grandfathered in" certain county ordinances that antedated the 1995 statutes. ORS 166.176(1) sets forth that savings clause:

> "(1)   Nothing in ORS 166.170 or 166.171 is intended to preempt, invalidate or in any way affect the operation of any provision of a county ordinance that was in effect on November 2, 1995, to the extent that the provision:
>
> "(a)   Established a procedure for regulating, restricting or prohibiting the discharge of firearms; or
>
> "(b)   Regulated, restricted or prohibited the discharge of firearms."

The savings clause is subject to an exception, one that is almost identical to the exceptions in ORS 166.171(2)(d) and ORS 166.172(2)(b) for "[a] person discharging a firearm on a public or private shooting range, shooting gallery or other area designed and built for the purpose of target shooting." The exception to the savings clause in ORS 166.176(2)(a) provides:

> "Subsection (1) of this section does not apply to *** [o]rdinances regulating, restricting or prohibiting the discharge of firearms on a shooting range or in a shooting gallery or other area designed and built for the purpose of target shooting."[4]

---

[4] As part of the same 2009 law that amended ORS 166.171, *see* 260 Or App at 121 n 3, the legislature added a corresponding exception to ORS 166.176 for "[a]n employee of the United States Department of Agriculture, acting within the scope of employment, discharging a firearm in the course of the lawful taking of wildlife." Or Laws 2009, ch 556, § 4. The change is not material to our analysis.

All that is to say that, in this case—and unlike in *Oregon Firearms*—the question is not whether the general preemption statute, ORS 166.170, preempts a state agency from regulating the discharge of firearms. Counties have express authority to do so, subject to enumerated exceptions; and, in the case of county ordinances in effect on November 2, 1995, those exceptions are limited to a single relevant exception: the shooting-range exception in ORS 166.176(2)(a).

Thus, the inquiry before us narrows considerably. The zoning ordinance that plaintiffs asked the court to declare preempted, LCC 1.1375(2)(m), was adopted in 1994. The ordinance operates to restrict the discharge of firearms by preventing plaintiffs from using their property as a shooting range without obtaining a conditional use permit.[5] Therefore, unless an exception to the savings clause applies, "[n]othing in ORS 166.170 or [ORS] 166.171 is intended to preempt, invalidate or in any way affect the operation of" the county's conditional use requirement "to the extent that the provision" either "[e]stablished a procedure for regulating, restricting or prohibiting the discharge of firearms" or "[r]egulated, restricted or prohibited the discharge of firearms." ORS 166.176(1)(a), (b). Said differently, ORS 166.176(1) expressly saves the county's ordinance from preemption under ORS 166.170 and ORS 166.171, unless ORS 166.176(2)(a) provides otherwise.

We turn, then, to the meaning of ORS 166.176(2)(a). Again, that provision states that the savings clause "does not apply to *** [o]rdinances regulating, restricting or prohibiting the discharge of firearms on a shooting range or in a shooting gallery or other area designed and built for the purpose of target shooting." As they did below, the parties offer competing views of that shooting-range exception. In the county's view, the exception, like its related exceptions in ORS 166.171(2)(d) and ORS 166.172(2)(b), was aimed at preempting local regulation of the discharge of firearms by persons on established target-shooting facilities. The county argues that the legislature, by couching the exception in terms of areas "designed and built" for the purpose of target shooting, intended for local governments to continue

---

[5] Plaintiffs have never disputed that the county's conditional use requirement is an ordinance that regulates, restricts, or prohibits the discharge of firearms—indeed, that is plaintiffs' very complaint.

regulating *where* that discharge of firearms could occur—*i.e.*, counties could continue to restrict where a target-shooting facility could be built.

The county's proffered distinction—between regulating the existence of the target-shooting facility, on the one hand, and regulating what happens at existing facilities, on the other—finds some support in the text and context of the statute. As the county points out, ORS 166.176(2)(a) and the related exceptions in ORS 166.171(2)(d) and ORS 166.172(2)(b) refer to ordinances that regulate the discharge of firearms on a "shooting range," "shooting gallery," or "other area designed and built for the purpose of target shooting." ORS 166.176(2)(a); ORS 166.171(2)(d); ORS 166.172(2)(b). The legislature was specific about the characteristic that all the excepted locations—"shooting ranges," "shooting galleries," and "other" areas—have in common: They have been "designed and built" for the purpose of target shooting. *See Bellikka v. Green*, 306 Or 630, 636, 762 P2d 997 (1988) ("[W]hen the legislature chooses to state both a general standard and a list of specifics, the specifics do more than place their particular subjects beyond the dispute; they also refer the scope of the general standard to matters of the same kind, often phrased in Latin as *'ejusdem generis.'"*). It is plausible, then, that the legislature, by carving out an exception for the discharge of firearms at facilities "designed and built for the purpose of target shooting," was concerned only with the activities that occurred on existing target-shooting facilities, and did not intend to preempt local governments from deciding where those facilities could lawfully exist.

The better textual support for the county's position, though, is that ORS 166.176(2)(a) refers specifically to ordinances that regulate, restrict, or prohibit the discharge of firearms "on" a shooting range or "in" a shooting gallery or other area designed and built for the purpose of target shooting. The related exception in ORS 166.171(2)(d) is even more specific, referring to ordinances that apply to *"[a] person discharging a firearm on* a public or private shooting range, shooting gallery or other area designed and built for the purpose of target shooting." (Emphasis added.) Read in context, the exceptions plausibly can be understood as an effort to create uniformity through statewide regulation

of what occurs *on* or *in* target-shooting facilities, not as a restriction on where a local government must permit those facilities. That is, the exceptions can be read as limitations on the ability of a county to apply local regulations to persons who are discharging firearms at established target-shooting facilities, but not as preempting the ability of local governments to restrict where those facilities may be established in the first instance.[6]

Plaintiffs, on the other hand, interpret ORS 166.176(2)(a) to sweep up *any* county regulation of target-shooting facilities, including zoning restrictions like LCC 1.1375(2)(m).[7]

---

[6] As a matter of further context, a number of related firearms statutes similarly carve out protections for activities that occur on established or designated shooting facilities. For instance, ORS 166.220(2)(c) has stated since 1991 that the crime of unlawful use of a weapon does not apply to "[p]ersons discharging firearms *** upon public or private shooting ranges, shooting galleries or other areas *designated and built* for the purpose of target shooting." (Emphasis added.) Likewise, ORS 166.260(3)(a) provides that the crime of unlawful possession of a weapon does not apply to "[m]embers of any club or organization, for the purpose of practicing shooting at targets *upon the established target ranges*, whether public or private, while such members are using any of the firearms referred to in ORS 166.250 upon such target ranges, or while going to and from such ranges." (Emphasis added.) Although those statutes do not bear directly on the statutory construction question before us, they provide some support for the county's view that the legislature would have distinguished between where a shooting gallery or shooting range is established or designated, on the one hand, and what activities can be regulated at those established ranges, on the other.

[7] The precise contours of plaintiffs' interpretation are unclear. Plaintiffs devote most of their briefing to the 1995 preemption statutes and do not proffer any interpretation of the text of ORS 166.176. The closest they come to addressing the meaning of that statute is to quote from an opinion by the Land Use Board of Appeals (LUBA), *Sherwood v. Washington*, 36 Or LUBA 656 (2000), in which the board opined,

"ORS 166.176(1) begins by restoring county authority to regulate, restrict or prohibit firearms or to adopt county legislation that establishes a procedure for doing so, provided such county legislation was 'in effect on November 2, 1995.' ORS 166.176(1) would appear to authorize the disputed conditions [concerning noise limitations on the shooting range], which were adopted in 1992 and 1993. However, ORS 166.176(2) specifically limits the authority granted by ORS 166.176(1) so that it does not include authority to regulate an 'area designed and built for the purpose of target shooting.' When ORS 166.176 is read with ORS 166.170 and [ORS] 166.171, the preemption imposed on county regulation of 'target shooting' by ORS 166.170 remains."

(Footnotes omitted.) LUBA's analysis in *Sherwood*, which involved noise limitations on a *previously permitted* shooting range, does not inform our inquiry into whether the legislature also intended to preempt conditional use requirements as to target-shooting facilities that have not yet been established. In any event, contrary to plaintiffs' suggestion, LUBA is not a court, and we are not bound by LUBA's reasoning.

The text of the statute lends itself to that broader inter-pretation, as well. Nothing in ORS 166.176(2)(a) explicitly refers to the circumstances under which a shooting range, shooting gallery, or other target shooting area is consid-ered to have been "designed and built" for the purpose of target shooting, or explicitly requires that it was "designed and built" lawfully. Thus, it is plausible that the legislature intended ORS 166.176(2)(a) and ORS 166.171(2)(d) not only to preempt counties from applying local regulations to activ-ities on target-shooting facilities, but also to preempt ordi-nances that restrict where those facilities can be established.

We turn, then, to the pertinent legislative history for clues as to legislative intent. Initially, we note that the legislative history of the 1995 preemption statutes them-selves is not particularly helpful in determining what the legislature had in mind when it first enacted the exceptions concerning shooting ranges. Although House members actu-ally discussed the potential preemptive effect of HB 2784 on zoning of shooting ranges, their floor and committee dis-cussions yield inconclusive evidence of what the legislature ultimately understood to be the bill's effect. During a work session in the House Judiciary Committee, one of the com-mittee members, Representative Prozanski, raised concerns that the language of the bill, as drafted, could be construed as preempting local governments from having any say as to where shooting ranges could be located. Tape Recording, House Committee on Judiciary, HB 2784, Apr 3, 1995, Tape 15, Side A (statement of Rep Floyd Prozanski). After com-mittee counsel agreed that the language of the bill would allow cities to regulate the discharge of firearms but not the siting of shooting ranges, Representative Prozanski pressed the issue with his legislative colleagues, asking whether that was indeed the intent of the drafters. The committee chair, Representative Parks, responded obliquely to the question, reiterating that the purpose of the bill was to recognize the constitutional rights of gun owners and create uniform regulation. Tape Recording, House Committee on Judiciary, HB 2784, Apr 3, 1995, Tape 15, Side A (statement of Rep Del Parks). After Representative Prozanski inquired whether statewide siting standards would be enacted, another

representative, Representative Johnston, confirmed that, in his view, the language of the bill would not allow a local government to "say you can put them here but not there." Tape Recording, House Committee on Judiciary, HB 2784, Apr 3, 1995, Tape 15, Side A (statement of Rep Bryan Johnston).

When HB 2784 reached the House floor, Representative Prozanski rose in opposition to the bill, on the ground that the current draft "will not allow cities to do any type of zoning of * * * what I would call the zoning of shooting galleries within a residential zone." Tape Recording, House Floor Debate, HB 2784, Apr 12, 1995, Tape 82, Side A (statement of Rep Floyd Prozanski). He expressed a desire to "make certain that this bill is in fact within the intent of the drafters and does not prevent and exclude a local municipality from having some type of zoning regulations over shooting galleries * * *." *Id.* Shortly thereafter, another representative, Representative Ross, asked a question of the bill's carrier, Representative Tarno, regarding a line in the staff measure summary of the bill that stated, "Prohibits cities and counties from regulating the possession of firearms in public places rented, leased or otherwise occupied by a person." Referring to that line of the summary, Representative Ross specifically asked Representative Tarno, "Would this mean that counties could not regulate or prohibit firing ranges in rented areas in a residential area?" *Id.* (statement of Rep Barbara Ross). Representative Tarno responded in the negative, and his explanation ran contrary to Representative Prozanski's earlier remarks about the inability of local governments to restrict the location of shooting ranges. Representative Tarno stated, "The counties still have the option of having a county ordinance that prohibits the discharge within designated areas. The counties could establish an approved range." *Id.* (statement of Rep Veral Tarno). Another legislator, Representative Tiernen, immediately rose to "further elaborate on what the carrier just stated." *Id.* (statement of Rep Bob Tiernen). In the process, he suggested that opposition to the bill was unfounded, stating, "First off, this does not permit [sic] local jurisdictions from regulating the discharge of firearms, whether it's through a shooting

gallery, or backyard rabble rousings, or drive-by shootings." *Id.* What the bill accomplished instead, he submitted, was a uniform system of regulations that would allow gun owners to travel throughout the state. *Id.*

Given the cross-cutting remarks on the House floor, we cannot say with any certainty what the House understood to be the effect of HB 2784 on the siting of shooting ranges, let alone what the legislature as a whole understood. It is possible that a majority of the House agreed with Representative Prozanski's understanding of the bill and passed it nonetheless; it is also possible that, based on the carrier's assurances, the legislators did not understand (or intend) the bill to have any effect on the ability of local governments to restrict the areas in which an "approved range" could be established.

That inconclusive testimony from the House is the extent of the relevant legislative history for HB 2784. On the Senate side, the bill passed with minor amendments and without any substantive discussion in committees or during the floor debates regarding local regulation of target-shooting facilities.[8] The amended bill was then passed by the House, subsequently vetoed by the Governor, and then passed over his objection during the 1995 Special Session, but the scope of the exception concerning shooting ranges was not further discussed.

There is, however, legislative history concerning a separate bill passed in the 1995 Regular Session, HB 2876, later codified as ORS 197.770, that suggests that the 1995 legislature did not understand the preemption bill, HB 2784, to preempt city and county zoning of shooting ranges. That parallel bill, HB 2876, concerned the siting of "firearms training facilities." As initially proposed, HB 2876 would have required local governments to permit firearms training facilities on any land not zoned exclusively for residential

---

[8] During a public hearing on the bill, a representative of the League of Oregon Cities testified in opposition to the bill and noted that "shooting range" is not well defined under Oregon statutes; the issue was not further discussed. Tape Recording, Senate Committee on Rules and Elections, HB 2784, May 17, 1995, Tape 72, Side A (statement of Sarah Hackett).

uses. It was subsequently amended to provide instead that existing firearms training facilities would be allowed to continue operating. As enacted, HB 2876 provided:

> "(1) Any firearms training facility in existence on the effective date of this 1995 Act shall be allowed to continue operating until such time as the facility is no longer used as a firearms training facility.
>
> "(2) For purposes of this section, a 'firearms training facility' is an indoor or outdoor facility that provides training courses and issues certifications required [for certain enumerated purposes.]"

Or Laws 1995, ch 475, § 2. In the debate on the House floor, the bill's carrier, Representative Adams, clarified that the bill specifically referred to those facilities "in existence" and would not include expansion of existing facilities. Tape Recording, House Floor Debate, HB 2876, May 15, 1995, Tape 140, Side B (statement of Rep Ron Adams). The obvious implication, both from his remarks and from the text of the statute itself, is that firearms training facilities that were not in existence would continue to be subject to local zoning restrictions, as would those facilities that were in existence but had ceased being used as firearms training facilities as defined in the statute.[9]

We appreciate that HB 2784 and HB 2876 were considered in different committees and were passed by the legislature on different dates.[10] That said, we find it highly unlikely that the same 1995 legislature would have passed a bill that *expressly* required local governments to allow firearms training facilities to continue operating, but then *implicitly* went even further than that, by preempting any

---

[9] Plaintiffs suggest, by way of a footnote, that the county's interpretation of the term "firearms training facility" in LCC 1.1375(2)(m) is somehow inconsistent with the legislative definition of that term in ORS 197.770(2). The county's interpretation of "firearms training facility" is not properly before us in this case. In any event, we note that ORS 197.770(2), set out previously, 260 Or App at 129, was enacted after the county's ordinance. We fail to see why that statute would limit the county's understanding of a preexisting term in its own county code.

[10] The Senate initially passed the preemption bill only six days after the bill concerning the siting of firearm training facilities, with no mention of any overlap concerning zoning of shooting ranges.

zoning regulation of firearms training facilities or any other target-shooting facility.[11]

Lastly, in terms of legislative history, we look at the history of ORS 166.176(2)(a) itself. That history, to which we previously alluded, 260 Or App at 122, strongly suggests that the legislature, at least as of 1997, understood the shooting-range exception in ORS 166.176(2) to operate more narrowly than plaintiffs contend. After ORS 166.170 and ORS 166.171 were passed during the 1995 Special Session, representatives from Deschutes County, including Representative Luke, proposed a bill to remedy an "unintended consequence" of those statutes—namely, that they had preempted a Deschutes County ordinance that had been "carefully crafted" by the various stakeholders in that area. Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 2649, Apr 18, 1997, Tape 91, Side B (statement of Rep Dennis Luke). The county's ordinance, which had existed in some form since 1975, had allowed for the creation of "restricted areas" in which the discharge of firearms was generally prohibited. Deschutes County Code (DCC) 9.08.050. The restricted areas, known as no-shooting zones, were no longer enforceable by the county after the enactment of the 1995 statutes, which had preempted county prohibitions on the discharge of firearms by, among others, "[a] landowner and guests of the landowner discharging a firearm, when the discharge will not endanger adjacent persons or property." ORS 166.171(2)(c). Representative Luke assured the subcommittee that he had spoken to the original sponsors of the 1995 legislation, and that they did not object to the legislative fix.

---

[11] In the same vein, as part of the 1995 Special Session, the legislature also enacted *former* ORS 467.135, Or Laws 1995, ch 3, § 40b (Spec Sess), which provided that

"[a]ny local government or special district ordinance or regulation now in effect or subsequently adopted that makes a shooting range a nuisance or trespass or provides for its abatement as a nuisance or trespass is invalid with respect to a shooting range for which no action or claim is allowed under ORS 467.130 and [ORS] 467.132."

If, as plaintiffs contend, the 1995 preemption statutes were intended to preempt all local regulations concerning shooting ranges, then *former* ORS 467.135 (subsequently repealed and reenacted in a Special Session in 1996, Or Laws 1996, ch 8, §§ 9, 10 (Spec Sess)), would have been superfluous.

On the House floor, Representative Luke carried the bill and again explained that it was intended to restore the ability of Deschutes County (and any other counties with similar ordinances) to enforce preexisting regulations that would prohibit the discharge of firearms in rural subdivisions. Tape Recording, House Floor Debate, HB 2649, May 7, 1997, Tape 97, Side B (statement of Rep Dennis Luke). The statutory change, Representative Luke explained, was not intended to undo the 1995 preemption statutes; he also stated that the bill would not cover shooting galleries, but he did not further elaborate on that exception. *Id.* The bill passed the House unanimously.

The legislative history on the Senate side reveals a similar focus on Deschutes County's ordinance. Before the Senate Committee on Crime and Corrections, the Deschutes County Sheriff appeared in support of the bill and explained that it was necessary to restore the no-shooting zones within the county, which the 1995 preemption statutes had made illegal. Tape Recording, Senate Committee on Crime and Corrections, HB 2649, May 21, 1997, Tape 126, Side A (statement of Greg Brown, Deschutes County Sheriff). Representative Luke also spoke to the Senate committee in support of the bill, explaining that, under Deschutes County's ordinance, voters within rural subdivisions had the ability to create "no-shooting zones" by obtaining the signatures of registered voters in the area. He told the committee that homeowners in Deschutes County were interested in restoring those zones; he further represented that he had spoken to the sponsors of the 1995 legislation, that it had not been their intent to preempt the county's ordinance, and that they did not object to the bill. *Id.* (statement of Rep Dennis Luke). As in the House, the bill passed the Senate overwhelmingly.

Although the legislators did not directly address the ability of a county to restrict where shooting ranges are located, the often-expressed goal—to reestablish no-shooting zones in Deschutes County—strongly suggests that the legislature did not understand the shooting-range exception to operate so expansively as to preempt the ability of a county to decide

where shooting ranges could be located. If the legislature was intent on restoring the ability of a county to prohibit landowners and their guests from discharging firearms, *cf.* ORS 166.171(2)(c) (preempting such regulation), it would be a curious drafting decision to include, as part of that fix, an exception that nevertheless allows those same landowners to circumvent the ban on discharge simply by setting up a small shooting range on their property. That is, a shooting-range exception that would preempt a county's ability to regulate where a shooting range could be lawfully established—thereby effectively allowing property owners to open backyard shooting ranges, shooting galleries, or other target-shooting areas anywhere in the county, including within a no-shooting zone—would significantly undermine the efficacy of the very ordinance that HB 2649 was intended to save. It is more likely, given the express purpose of the bill, that the legislature understood the exception in ORS 166.176(2) to preempt county regulation of the discharge of firearms on *lawfully established* shooting ranges. Indeed, Deschutes County's code includes that very limitation; it expressly provides that the restrictions in no-shooting zones do not apply to "[a] *lawfully established* firing range." DCC 9.08.040(A)(3) (emphasis added).

Although the legislative history of ORS 166.176(2), and the parallel history of the 1995 statute concerning siting of firearms training facilities, strongly suggest to us that the legislature intended the shooting-range exception to operate more narrowly than plaintiffs contend, it does not conclusively resolve the ambiguity in the text of ORS 166.176(2). We therefore turn to relevant canons of construction to determine the meaning of the statute. *Gaines*, 346 Or at 171-72; *see Doe*, 232 Or App at 60 (turning to relevant maxims of statutory construction to resolve ambiguities regarding firearms preemption statutes). And here, the pertinent canon likewise points toward a narrower construction of the shooting-range exceptions in the firearms preemption statutes.

We assume that the legislature did not intend an unreasonable result. *Doe*, 232 Or App at 60 (citing *State v.*

*Bordeaux*, 220 Or App 165, 175, 185 P3d 524 (2008), and *State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996)).[12] Under plaintiffs' proposed construction of the shooting-range exception, the legislature preempted all local ordinances concerning the siting of shooting ranges and did not replace those local ordinances with any statewide standards. That interpretation of ORS 166.171 and ORS 166.176, coupled with the general preemptive effect of ORS 166.170, would mean that a local government could not enact or enforce an ordinance intended to prevent a business from opening a commercial shooting range next to a home, or a school, or a hospital. Property owners would be able to open backyard shooting ranges in the middle of a residential street—including in Deschutes County, where landowners who would otherwise be prevented from discharging firearms on their property could simply design and build a target-shooting range to circumvent the county's otherwise enforceable no-shooting restrictions. Those outcomes seem far afield from the concerns addressed by the legislature in 1995 and 1997 and lead us to conclude that, had the legislature actually intended those results, it would have said so explicitly in the statute itself—especially in 1997, when it restored the ability of a county to create no-shooting zones.

We therefore conclude, as the circuit court did, that the county's ordinance, LCC 1.1375(2)(m), is not preempted by ORS 166.170, ORS 166.171, or ORS 166.176. LCC 1.1375(2)(m), which requires property owners to obtain a conditional use permit to operate a "firearms training facility" in a T-C zone, is not an "[o]rdinance regulating, restricting or prohibiting the discharge of firearms *on* a shooting range or *in* a shooting gallery or other area designed and built for the purpose of target shooting" under ORS 166.176(2)(a). (Emphases added.) Accordingly, the savings clause in ORS 166.176(1) applies in this case, and the county's ordinance

---

[12] The county urges us to resolve any ambiguity based on the "well settled" presumption that "a state statute will not preempt a local civil regulation unless the intent to do so is express or because the local regulation cannot operate concurrently with state law." Whatever "home rule" preference might otherwise exist has been negated by ORS 166.170, which provides that, except as expressly authorized by statute, the authority to regulate the use of firearms "is vested solely in the Legislative Assembly."

is not preempted by ORS 166.170 or ORS 166.171. For that reason, we affirm the circuit court's declaratory judgment.[13]

Affirmed.

---

[13] Plaintiffs advance two other assignments of error that do not merit significant discussion. In their second assignment of error, plaintiffs submit that the court did not adequately explain its reasoning in granting summary judgment. We fail to see how that purported shortcoming, even if it were the case, would amount to reversible error; the issue before us is one of law that we decide without deference to the circuit court's explanation. In their third assignment, plaintiffs contend that the court erred "in granting to County relief which it had not requested: declaratory judgment in its favor on the merits." The court, however, did no more than plaintiffs requested. They invoked the circuit court's authority to declare whether the county's code provision was preempted. The court decided the issue adversely to them—correctly so—and declared as much in its judgment.