Submitted April 6, 2021, affirmed April 20, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ATIYEH MEISHA TOWNSEND,
*Defendant-Appellant.*

Clackamas County Circuit Court
17CR22078; A171681

509 P3d 679

Defendant appeals from a judgment of conviction for two counts of identity theft (ORS 165.800(1)). She argues that the trial court erred in denying her motion for judgment of acquittal (MJOA) as to each count because she did not "utter" the personal identification of another person by using a false name on her hospital intake forms and writing down a false social security number. *Held*: A rational factfinder could have concluded that defendant did "utter" the personal identification of another for the purpose of obtaining medical services for herself under a false name. The trial court did not err in denying the MJOA.

Affirmed.

Ann M. Lininger, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.

MOONEY, P. J.

Affirmed.

**MOONEY, P. J.**

Defendant appeals from a judgment convicting her of two counts of identity theft, ORS 165.800(1).[1] She assigns error to the trial court's order denying her motion for judgment of acquittal (MJOA) on each count of identity theft, arguing that she did not "utter" the personal identification of another person. She also assigns error to the trial court's instruction to the jury that it could return a nonunanimous guilty verdict. We conclude that defendant uttered the personal identity of another within the meaning of ORS 165.800(1). And, because the jury returned unanimous verdicts on both counts, any instructional error was harmless; therefore, we reject the second assignment without further discussion. *State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020), *cert den*, ___ US ___, 141 S Ct 2837 (2021) (concluding that a nonunanimous verdict jury instruction is harmless where the jury returns a unanimous verdict). We affirm.

When we review a trial court's ruling on an MJOA, we view the evidence and all reasonable inferences in the light most favorable to the state. *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019). We determine only whether a rational factfinder could find that the state had proved every element of the offense beyond a reasonable doubt. *Id.* If the issue "turns on the meaning of a statute," we review a denial of an MJOA for legal error. *State v. Bordeaux*, 220 Or App 165, 170, 185 P3d 524 (2008).

---

[1] ORS 165.800 provides, in relevant part:

"(1) A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person.

"*****

"(4) As used in this section:

"(a) 'Another person' means an individual, whether living or deceased, an imaginary person ***.

"(b) 'Personal identification' includes *** any written document or electronic data that does, or purports to, provide information concerning:

"(A) A person's name, address or telephone number;

"*****

"(C) A person's Social Security number or tax identification number[.]"

Defendant sought medical care from the Willamette Falls Hospital emergency room on two occasions and, on each of those occasions, she provided staff with the false name "Sandra Jenner" when they asked her for identifying information. On the first occasion, she signed intake forms with a false name beginning with the initials "S" and "J." Defendant did not receive treatment on that first occasion, but she returned the following day seeking medical care and using the same false name. Hospital staff became suspicious that defendant was providing false information when she hesitated when giving her birthdate and said that she did not know her phone number, address, or emergency contact information. She again signed intake documents authorizing service and, at the request of staff, wrote her social security number on a separate piece of paper. The staff then called the police to report defendant. The police determined defendant's real name and an officer confronted her about that in her hospital room. Defendant admitted that she had provided a false name, explaining that she believed she needed medical treatment but did not have insurance. Upon entering her true name into the system, hospital staff discovered that defendant did have insurance.

The state charged defendant with two counts of identity theft under ORS 165.800(1) on the theory that she "uttered" the personal identification of another. The question on appeal is whether defendant "uttered" the personal identification of another when she signed the intake documents and again when she provided a false social security number by writing it on a separate piece of paper. Utter is not defined in the statute. However, the Oregon Supreme Court concluded that the legislature "used the word 'utter' in the same sense that it had used it in the forgery statute." *State v. Medina*, 357 Or 254, 266, 355 P3d 108 (2015).

*Medina* involved a defendant who, when arrested, signed a fingerprint card and a property receipt with a false name. *Id.* at 256. Both documents had been presented to him by a police officer. *Id.* After concluding that the identity theft statute "applies to misrepresenting a person's identity to an officer to gain an unwarranted advantage[,]" *id.* at 264, the court next examined the ordinary meaning of "utter" and concluded that the legislature used that word

to mean "'to put (as notes or currency) into circulation; *specif*: to circulate (as a forged or counterfeit note) as if legal or genuine.'" *Id.* at 265 (quoting *Webster's Third New Int'l Dictionary* 2526 (unabridged ed 2002) (italics in original)). The court then considered the context within which the identity theft statute had been enacted and concluded that "utter" was used by the legislature in the same way that it was used in the forgery statute. *Id.* at 266. A person commits second-degree forgery when, "with intent to injure or defraud, the person * * * [u]tters a written instrument which the person knows to be forged[,]" ORS 165.007(1)(b), and in that context, "utter" means "to issue, deliver, publish, circulate, disseminate, transfer or tender a written instrument or other object to another," ORS 165.002(7). The court concluded that the defendant had not uttered false documents when he signed the fingerprint card and property receipt, explaining:

> "In this case, all that the stipulated record reveals is that, after defendant was arrested and taken to the police station, he 'was fingerprinted,' the officer 'asked him to sign the fingerprint card,' and defendant did so. There is no evidence that defendant filled out the fingerprint card or the property receipt or that he offered or tendered either of those documents to the police. Rather, all the record shows is that defendant falsely signed two documents that government officials created for their own use and that they tendered to defendant for his signature.

> "The fact that defendant falsely signed the two documents does not mean that he uttered them. The law has long distinguished between forging a document by falsely signing it and uttering a forged document. Nor does the context in which these documents were created and signed give rise to a reasonable inference that defendant uttered them. In reaching that conclusion, we do not foreclose the possibility that a defendant could 'utter' a document that he or she asked another person to create and disseminate. A defendant, for example, might ask a bank teller to draw a counter check on an account. The defendant might then forge the account holder's name on the check and expressly or impliedly direct the teller to circulate the signed check. In that instance, a trial court reasonably could infer that the defendant, in asking the bank teller to draw and circulate the check, had 'uttered' it through an agent."

*Id.* at 266-67. And because there was no evidence from which it could be inferred that the officer was acting as the defendant's agent, the court reversed defendant's conviction for identity theft. *Id.* at 271-72.

Returning to the present case, we begin with the first count of identity theft, which implicates defendant's act of signing the intake documents with a false name. Defendant argues that *Medina* requires reversal of that conviction because, as with the defendant in *Medina*, she did not create or provide the documents that she signed. She simply signed documents that were maintained by the hospital and presented to her in the ordinary course of business. But the origin of the documents was not the deciding factor in *Medina*. The question then is whether defendant expected that hospital staff would disseminate the information provided on the intake forms on her behalf so that she could obtain medical services under a false name. In contrast to *Medina*, defendant here was affirmatively seeking medical services when she voluntarily presented herself to the hospital for that purpose, and she signed the hospital-provided forms with a false name as a necessary step toward obtaining those services. A rational jury could infer that defendant signed the forms with a false name, expecting staff to disseminate the information she provided on the forms to others so she could benefit from the use of a false identity.

As for the second count which involves defendant's act of writing down a false social security number, our analysis is essentially the same. Defendant wrote down a false social security number so that hospital staff would disseminate and use that information as a necessary step to achieve her purpose—to obtain medical services under someone else's name. Again, a rational jury could infer that defendant, with the intent to deceive or defraud, expected hospital staff to disseminate the false identifying information in her behalf so that she could obtain medical services.

A rational factfinder could have concluded, on this record, that defendant "uttered" the personal identification of another when she signed the intake documents with a false name and when she wrote down a false social security number, both for the purpose of obtaining medical services

for herself using the name of another. Therefore, the trial court did not err in denying defendant's MJOA.

Affirmed.